# P. W. OBER, Respondent, v. D. H. SCHENCK et al., Appellants.

LEASE OF MINING CLAIM—TERMINATION—CORPORATION—UNAUTHORIZED ACT OF OFFICER—RATIFICATION—EXCEPTIONS—APPEAL.

1. Plaintiff leased a mining claim of defendant mining company. The lease was executed by the company's superintendent, and provided, if there should be a sale or transfer of the property during the term, plaintiff would surrender and the lease be void. Soon after plaintiff struck ore in paying quantity, such superintendent falsely notified plaintiff that the property had been sold or changed hands, and directed him to quit work, which he did and surrendered the mine to defendant company. *Held*, that plaintiff was justified in relying on the notice received.

2. Where the superintendent of a mining company, who executed the lease, falsely notified the lessee that the property was sold, and to quit work, as the lease provided in that event, and the company ratified such notice by refusing to reinstate the tenant after he discovered that the property was not sold, the company was responsible for such act of its officer, though he had not been specially authorized to make the false statement by the directors.

3. A mining lease provided that it should terminate on "a sale or transfer" of the property during the term. *Held*, that the word "transfer," as there used, relates to a transfer of title, and not to a mere transfer of right of possession.

4. Without knowledge of plaintiff's counsel, defendants' counsel, with consent of the court, went to the court reporter's room and there caused exceptions to be noted by the reporter to parts of the charge and to refusals to charge. *Held*, errors assigned on exceptions so noted should not be considered.

## Decided July 30, 1901.

Appeal from District Court, Salt Lake County.—*Hon. A. N. Cherry*, Judge.

Action by P. W. Ober against D. H. Schenck and another. From a judgment for plaintiff, defendants appeal.

AFFIRMED.

From the record in this case it appears that on the thirteenth day of December, 1899, plaintiff and defendant Dalton & Lark Gold, Silver & Lead Mining & Milling Company entered into a written contract, executed by the defendant Schenck as the mining company's superintendent, whereby the defendant company leased to plaintiff a certain mining claim for the term of six months. One of the provisions of said lease is as follows: "It is hereby agreed by and between the said parties, should there be a sale or transfer of said property at any time during the life of this lease, the said party of the second part [the plaintiff] will surrender said property, and this lease shall be null and void." Pursuant to his lease, plaintiff worked the mine for some time, and about December 23 struck ore, and made one shipment about January 6 or 7 following, netting plaintiff about $800, after deducting freight, expenses, and royalty, the payment of which amount was made on January 11, 1900, to plaintiff, by the defendant company, at its office in Salt Lake City. Upon the return trip to his mine the next morning, defendant Schenck came to plaintiff upon the train, and told him that the Dalton & Lark property had been sold, or changed hands, and requested him to clean up what ore he had and quit work on the property. Plaintiff, believing the statement to be true, quit his work, discharged his men, and shipped the remaining ore after the clean-up, which latter netted him about $185. It further appears from the record that on eleventh day of January, 1900, the defendant mining company gave an option to one P. T. Farnsworth upon certain mining property, including the claim leased by plaintiff; that by the provisions of such option agree-

ment Farnsworth was to have immediate possession of the property, and was to pay the defendant mining company ·$300,000 in several installments, covering a period of about ten months. The option further provided as follows: "This agreement is an option, and it is also agreed that if any payment herein provided for shall not be made when due, and shall be in default for thirty days, then this contract shall become forfeited, and all payments theretofore made· shall be forfeited to said party of the first part, and all rights hereunder of the said party of the second part shall revert to said party of the first part as liquidated damages. . . . But it is distinctly understood and agreed between the parties hereto that said party of the second part does not bind himself to pay for said property, but that he has the option to pay for the same or·not, as he may elect." After paying some $14,000, Farnsworth defaulted in the further payments, and on August 29, 1900, the agreement was cancelled. At the time of taking the option Farnsworth was advised by defendants of the existence of some leases upon the property, but was not so advised as to plaintiff's lease. Some weeks later the defendant Schenck solicited and obtained from Farnsworth a lease for himself and brother to work the same claim formerly leased by plaintiff. Later plaintiff came to Farnsworth for possession under his lease of the property then being worked by the defendant Schenck, but Farnsworth informed him that, although he was willing to reinstate plaintiff in his former right, yet would decline, because of the differences existing between plaintiff and defendant company. On March 24 and 27, plaintiff served notice upon the defendants and upon Farnsworth, setting out his written lease, and the fact that he was induced to leave the property by defendants' false representations, and that he had discovered that the property was not sold, and demanded to be permitted to resume work under the lease. He was at that time told by the president of the defendant company that the

property was sold, and restoration to possession was denied. Thereupon plaintiff brought this action for reinstatement, and for damages and an accounting for all ores removed from the claim in question. A trial by jury was had, and the plaintiff obtained a verdict for $2,000 damages, from which verdict and subsequent judgment the defendants appeal to this court.

*Messrs. Snyder, Westervelt, Snyder & Wight* for appellants.

*Messrs. Dey & Street* and *W. H. Bramel* for respondent.

After stating the facts, the opinion was delivered by ROLAPP, District Judge.

The principal ground upon which the appellants rely for a reversal is that the court erred in refusing to grant defendants' motion for a nonsuit at the close of plaintiff's testimony. They insist that the motion should have been granted, for the following reasons: (1) Plaintiff's evidence failed to disclose that the defendant corporation made representations of any kind. (2) Any representations made by the defendant Schenck, purporting to cancel a written contract between plaintiff and the defendant company, were without the scope of his authority, and therefore of no binding effect upon anybody. (3) Plaintiff was not induced to surrender, nor did he surrender, his lease by reason of the representations made. (4) The representations made were in fact true, and operated as a cancellation of the lease.

Considering the first three points together, we think the plaintiff's case presented a prima facie case, and was properly submitted to the jury. Plaintiff's evidence tended to prove that the defendant David Schenck, as superintendent, acting on behalf of the Dalton & Lark Company, made the lease to plaintiff, that the Dalton & Lark Company knew of the exist-

ence of the lease, and knew that the plaintiff shipped ore to the company according to the condition of the lease, and settled with him for the proceeds of the ore under the terms of the lease. Plaintiff's evidence also tended to show that the same superintendent who made the lease to plaintiff, whose acts in so doing were unquestioned and ratified by the company, was also the same person who, while acting in the same capacity, notified plaintiff that the property had been sold, and his lease had become null and void, and that he must quit work; that plaintiff relied upon the representations, and, acting under the directions of the superintendent, shipped the ore he had ready for shipment to the company, and the company settled with him for the ore; that, when the plaintiff discovered that the property had not been sold, he went first to Farnsworth, who was willing to reinstate him, except for differences existing between plaintiff and the Dalton & Lark Company. We also think the testimony fairly tended to show that the defendant mining company ratified and approved the termination of the lease caused by the representations of the defendant Schenck, because, when plaintiff served a written notice and demand for reinstatement upon the defendants, they were informed of all the facts, notwithstanding which they not only declined to reinstate plaintiff, but plaintiff's testimony showed affirmatively that the president of the defendant mining company reiterated the superintendent's statement that the property had been sold. Under such circumstances a corporation will not now be permitted to avoid liability because it is not affirmatively shown that express authority from its board of directors was given to its superintendent to make a statement relating to the working of property immediately under his supervision. The plaintiff had a right to believe that the greater authority of giving a lease of the company's property included the lesser authority of informing him when one of the contingent events mentioned in such lease as terminating the same should actually happen;

and we think the plaintiff had the further right to act upon such representations without resistance or objections. That the authority to give such information actually did exist in the superintendent was finally made clear in this case when the defendant Schenck himself stated that he was acting for the defendant company in making his representations to the plaintiff.

The remaining point made by appellants upon the motion for a nonsuit is that the representations were in fact true because plaintiff's lease provided that it should be null and void whenever there should be "a sale or transfer" of the property during the life of the lease, and appellants contend that in order to terminate this lease it was not necessary that any actual sale should have taken place, so long as there was a transfer or delivery of possession, as disclosed by the evidence in this case. That it was not true that there was a sale of the property is too apparent to admit of controversy. The very terms of the agreement between Farnsworth and the defendant company expressly forbid any such interpretation. No court could ever be induced to hold that an agreement providing that a party "does not bind himself to pay for said property" amounts to a contract of sale. Contracts of sale, before being such must contain mutual obligations of full payment and absolute conveyance. Consequently the only inquiry is as to the meaning of the word "transfer" in this lease. The word "transfer" may mean either a conveyance of title or merely a delivery of possession; and, if the construction of a written contract is questioned, we must look to the document itself, to the entire transaction and the surrounding circumstances, to ascertain the true intent of the parties. There is nothing in the lease itself which would indicate that the minds of the parties ever met upon the proposition that the mere delivery of possession to a third party would have the effect to cancel plaintiff's lease, because, if that were true, defendants were at

liberty, at any time when it became profitable to them, to lease the property to a stranger, and thus oust the plaintiff from possession.   To put upon the lease the strained construction contended for by appellants would not be warranted by either the language of the contract or by any circumstances developed upon the trial of this cause.   We think that, considering all the circumstances of this case and the document itself, the word "transfer" was used in its ordinary sense as applicable to real property.   When used in that connection, the word "transfer," unless otherwise restrained or limited, is either synonymous with the word "sale," or it imports something more than or subsequent to sale; selling being but one mode of transferring property.   Property may be voluntarily transferred from one person to another by sale or gift, or it may be involuntarily transferred by operation of law.   In this case we are of the opinion that the reasonable construction to be placed upon the word "transfer" is that of a transfer of title, rather than a mere transfer of possession.

Appellants further insist that a reversal of the judgment below should be granted because the court erred in giving its instructions to the jury and in refusing to give certain instructions requested by defendants.   We must refuse to consider these assignments of error, for the reason that the exceptions to such instructions and the refusal of the requests were not properly taken.   It appears from the record that, after the court had delivered its charge to the jury in this action, counsel for defendants, while plaintiff's counsel was arguing to the jury, and before verdict, informed the court, without informing counsel for plaintiff, that he desired to save some exceptions to the charge of the court, and at the same time inquired of the court if he might have permission to have said exceptions taken down by the official court reporter on the record in the clerk's office, which was a room adjoining the court room. Thereupon the court informed counsel for defendants that he

could take the exceptions in that manner, and thereupon counsel for defendants caused the several exceptions to the charge of the court as given, and to the refusal of the court to give the instructions as requested by the defendants, to be entered by the said court reporter on the record, and said exceptions so taken and entered were not called to the attention of the court or known to the court until after verdict, and upon the hearing of defendants' motion for a new trial, and were not taken in the presence or hearing of counsel for plaintiff. Counsel for appellants admit that ordinarily, under the decisions of this court, the manner of thus entering the exceptions was improper and of no avail; but they insist that, inasmuch as the permission of the court was obtained to take exceptions in the manner indicated, the requirements of the statute have been substantially complied with, and that respondent can not complain. But in this view we can not concur. While it is true that we have repeatedly held that the primary object of calling the attention of the court to any misstatement of law is to give the trial judge an opportunity to correct any errors in his charge before the jury reaches a verdict, and thus avoid the hazards of a new trial, yet that is not the only purpose of the practice; and as a matter of public policy we can not even permit a trial judge to endanger the results of a trial by thoughtlessly avoiding having called to his attention any possible errors made by him in his charge to the jury or in any other portion of the trial. Hence the taking of exceptions outside of the court room, and without the knowledge of the adverse party, even if it is done by the consent of the court, is as much a wrong to such adverse party as it would be to the court if its consent had not been previously had. The statute relating to the taking of exceptions is enacted as much for the benefit of the litigants and the public as it is for the trial judge, and if exceptions are made publicly at the proper time the opposing party may confess the error, or avoid the possibility of error, by consenting

to a correction of the charge complained of, and it must be presumed that ordinarily under such circumstances a trial judge would be willing to comply with the united requests of the opposing parties. In each contested action in any court in this state, each party is entitled to full notice of all proceedings had in such cause, from the filing of the complaint or summons until the rendition of the final judgment, and if errors should occur during a trial, the exceptions to which have not been called to the attention of the adverse party or the court itself, such errors will not be reviewed by this court on appeal. Except in those cases where the law permits a question to be raised for the first time in the appellate court, or where the statute reserves an exception to a party as a matter of course, the only legal questions that could be presented to this court for determination upon appeal are those decisions or statements of law of an inferior tribunal deliberately advocated and attacked in the court below, and to which decisions or statements timely and public exceptions have been properly entered by the complaining party. While that is true, yet that does not dispense with a compliance of rule 6 of this court, requiring that "the points relied upon for the reversal of the judgment or decree or order appealed from" should be fully set forth. We think that this requirement is in the interest of the public and litigants, and the practice in that respect ought to be upheld as a just and time-saving provision. The assignment of errors is, in effect, the complaint in the appellate court, and it would be unjust alike to the court and opposing counsel to permit an appellant to urge for the first time in his brief, or upon oral argument, an error of which counsel for the respondent has not been apprised. Without an assignment of errors the court has nothing before it, and hence an omission to make such a written assignment will result in an affirmance of the judgment to the extent that it may be affected by the error not assigned. If, under special circumstances, justice should require a review of

an unassigned error apparent upon the face of the record, the discretionary powers of this court are quite sufficient to permit such proceedings to be had as will properly present to this court the questions involved. Besides, in this case, we are of the opinion that the complaint states facts sufficient to constitute a cause of action and is not subject to a general demurrer. Therefore we see no necessity for the exercise of any unusual power possessed by this court. We think the judgment ought to be affirmed, with costs, and it is so ordered.

*Baskin* and *Bartch, JJ.,* concur.