Richmond, P. J.,
dissenting:
I am unable to concur in the majority opinion of the court.
*225 This action is brought to recover the sum of $1,500 for alleged services rendered by James L. Ferguson to the appellants, The Owl Canon Gypsum Company, Joseph E. Clemons and Clarence M. Graves.
Two causes of action are set up in the complaint but the second cause of action was substantially abandoned.
In the first cause of action it is alleged that during the months of July, August and September, 1889, Ferguson was employed by the defendants to negotiate the sale of shares of stock in The Owl Canon Gypsum Company for the sum of $6,000, for which services he was to receive the sum of $1,500; that in pursuance of the agreement he went to Chicago, Illinois, and effected a sale of the property to one John F. Abel for the sum mentioned. That the purchaser was at the time able and ready to consummate the purchase, but that the defendants had failed to transfer the property or any part of the same in violation of their agreement and refused to pay the sum of $1,500, as they had agreed. That the claim was duly assigned to appellees, Sarah E. Ferguson and Flora M. Smith for value received.
The defendants answer, denying the employment arid allege ignorance of the sale by Ferguson to Abel as well as the ability and willingness of Abel to take and pay for the property.
They aver that Ferguson was, on or about the first day of July, 1889, to visit Chicago on business of his own, and that before he left Denver they authorized him to sell for them a certain number of shares of stock which they held in The Owl Cañón Gypsum Company, for the sum of $6,000, and agreed that in case of a sale they would pay him a reasonable commission or compensation. And further say that they reserved the liberty to at any time make sale of the property or stock on their own account; that on the 10th of September, 1889, they wrote Ferguson that they were negotiating the sale of the stock. On the 22d of September Ferguson replied stating that he had not concluded the sale of the stock and could not do so for sometime, and not until the *226 parties who contemplated purchasing visited Colorado to inspect the gj^psum mine. That before said sale they had not received any notification from Ferguson that he had sold, nor was any demand made from the defendants for the delivery of the stock in pursuance of the alleged agreement, nor was there any tender of monej'- made by Ferguson or Abel, or by any person in their behalf, ever made to them.
The replication denies the allegations in the answer and reaffirms the statements made in the complaint.
The cause was tried to a jury and resulted in a verdict against defendants for the sum of $1,500.
Motion for a new trial overruled and judgment entered. To reverse this judgment this appeal is prosecuted.
On the trial the following agreement was introduced in evidence:—
“ This agreement, made and entered into this 23d day of July, A. D., 1889, by and between Joseph E. Clemons, and --Graves, of the first part, and James L. Ferguson, of the second part, witnesseth :
The said party of the second part agreed to negotiate the sale of fifteen hundred shares of The Owl Canon Gypsum Company, shares-par value $10 per share-at and for the price or sum of $6,000, said sale to be made on or before September 1, 1889.
In consideration of the above, the said parties of the fiz’st part agree that as soon as said 500 shares shall have been sold by said Ferguson, and said stock issued, delivered and paid for, they will deliver to said Ferguson 500 shares of said stock in payment for his service in making such salé or sales.
Joseph E. Clemons, President.
Clarence M. Graves, Secretary.
And in addition thereto a letter in words and figures as follows:—
The Windsor Pharmacy, Cor. Eighteenth and Larimer Sts.
Denver, Colo., August 17,1889.
James Ferguson, Esq., Chicago.
Dear Sir: — Your letter of the 34th at hand. We will take *227 $6,000 for three fourths of the stock — that is, three fourths of 7000 shares. That will give him a three fourths interest in the reserve stock of 3000 shares; and we will give you $1,500 for making the sale. You see, we cannot set a price on the other quarter; the gentleman that owns the other quarter is at Fort Collins. Hardly think he would sell. This would give the full control of everything. Hope you will meet with success. Let me hear from you when convenient.
Yours respectfully,
C. M. Graves.”
Other exhibits were introduced which we do not deem it necessary to recite in full, and to which reference is hereinafter made. .
It will be observed from the above agreement that Ferguson agreed to negotiate the sale of 1500 shares of the Owl Canon Gypsum Company for the sum of $6,000 on or before the first of September, 1889, for which he was to receive as compensation 500 shares of stock, and that Clemons and Graves signed the agreement as president and secretary without designating the name of any corporation either in the body of the instrument or beneath their signatures.
The appointment of Ferguson as agent is but a recapitulation of the agreement. It will also be seen from the letter of August 17th, that Graves evidently wrote for himself and Clemons, agreeing to take $6,000 for three fourths of the capital stock of the company and to pay $1,500 for making the sale.
It appears from the evidence that Ferguson, on the 10th September, 1889, entered into a contract of purchase, as the agent and attorney in fact of The Owl Canon Gypsum Company, with one John F. Abel. This agreement is in words and figures as follows :—
“ These articles of agreement entered into this 10th day of September, 1889, by and between The Owl Canon Gypsum Company, party of the first part, and John F. Abel, of the second part, witnesseth: That the said party of the first *228 part, for and in consideration of the sum of $6,000, to be paid by the said party of the second part in manner hereinafter specified, hereby agrees to sell, assign and set over by good and sufficient deeds and articles in writing three fourths (!) of all the capital stock of said Owl Canon Gypsum Company, together with all lands, tenements, appurtenances, rights of possession, deeds, patents, certificates of location, affidavits of labor, and all interest in and to the labor, and all interest in and to any of the above, as well as in and to any and all books, papers, accounts and charter of said company, to the extent of a three fourths (|) interest in each and all of the above, and to the same extent of interest in any and all of the real and personal estate of the said Owl Canon Gypsum Company, to have and to hold the same to his, the said John F. Abel, his heirs and representatives own use and behoof forever.
“ And for and in consideration of the premises aforesaid, the said John F. Abel, for himself, his heirs and representatives, hereby binds himself to pay to the said Owl Canon Gypsum Company the just and full sum of $6,000, in manner following, to wit: Two hundred dollars at the time of ensealing and delivery of these presents, the receipt of which is hereby acknowledged, $4,800 at the time, and as soon as the mine or quarry, as well as the charter and title of said company, can be examined by the said Abel (no unreasonable delay to be made by him), and $1,500 upon the receipt of a patent, or its equivalent, to all the lands of said company, to wit: The -gypsum land now claimed by it, and located near Fort Collins, in the state of Colorado ; provided, however, that in the event that the agent and attorney in fact of said company, James L. Ferguson, has misrepresented the true condition of said company, and its said land or quarries, then the said $200 is to be refunded to the said Abel, and the payment of the last two above specified payments shall not be incumbent upon him to be paid, but said John F. Abel or his representatives must make known to said company any misrepresentations, if any there be, on *229 the part of their said attorney in fact, within five days after having examined the said property aforesaid, or the said $200 shall be forfeited to said company as and for liquidated damages for breach of contents hereof. It is understood that the foregoing conveyance, or contract for conveyance, upon the fulfillment of the terms hereof by the parties hereto, will vest the said John F. Abel with the ownership of three fourths of 7000 shares of the capital stock of said company, together with a three fourths interest in the reserved or treasury stock of said company, which is 8000 shares, and that the entire capital stock of said company is 10,000 shares, of the par value of $10 per share.
“ To the faithful performance of the contents hereof the parties hereto have bound themselves by their signatures, the day and year above written.
“ Owl Canon Gypsum Company,
“Per James L. Ferguson,
“ Agent and Attorney in Fact.
“ John F. Abel.”
Clemons and Graves claim in their testimony that at the time they were negotiating with Ferguson they reserved to themselves the right to negotiate for the sale of their interest .at all times. This is fortified by Ferguson in his letter of September 22, 1889, responding to the information by letter and telegram of Clemons and Graves to him, that they were negotiating the sale of their stock. He says: “ Of course I do not want to spoil a good deal for you, but do not think it would be advisable for you to get anxious and take less than the price you made me.”
The evidence wholly fails to show that Ferguson ever advised, by letter or wire, the defendants that he had entered into any agreement of any kind relative to the sale of the property, or that he had negotiated the sale. Nor does it appear that they contracted to dispose of any property or interest other than their shares of stock in the company. Neither is it shown that they were ever authorized by the company, directly or indirectly, to negotiate a sale of the *230 stock of the company, or rather ever authorized to enter into any agreement of any kind whereby the company should be bound. Yet, notwithstanding this fact, the verdict was rendered against the company as well as against Clemons and Graves, and the agreement was made between Abel and Ferguson as the agent of the company only.
It is evident that Ferguson, when entering into the agreement in Chicago between himself and Abel, was acting under the letter of August 17th, or it may be admitted was acting under the letter as well as the agreement of July. But he did not negotiate the sale under the agreement, as is evidenced by the documentary proof above quoted. He does not bring suit to recover the compensation nominated in that article, to wit, 500 shares. Instead of selling 1500 shares for •$6,000, he sells, or attempts to sell, three fourths of 7000 shares for the sum of $6,000, in the name of the Owl Canon Gypsum Company.
In the complaint no contract or agreement is set out showing that the Owl Canon Gypsum Company, by its officers or otherwise, over consummated an agreement of any kind or character with Ferguson for the sale of any stock or of any other kind of property. JSTor does the evidence disclose that the company ever had title to any real estate or gypsum mine. On the contrary, it seems to be admitted by all that the necessary amount of labor and money had not been expended upon the claim to entitle the company or any individual to a patent from the United States government, and that all of the contracts were entered into with the understanding between the parties that an amount of money in addition to what had .been expended was necessary to be expended in work upon the mine before such title could be obtained.
It seems almost unnecessary here to more than state that the defendants, Clemons and Graves, could not authorize the sale of any interest in the property of the company, and that the company did not authorize them to act as its agents. Heither was Ferguson ever by any act of the company authorized to enter into any contract of any kind or character *231 whatsoever in the name of the company. The mere fact that Clemons and Graves signed their names as president and secretary did not establish their right to bind the company or to employ agents to act for the company, nor has the company in any way ratified Ferguson's acts as its agent by availing itself of the fruits of his labor.
The power to bind officers and agents rests, of course, like every other power in the body of the corporators, unless some particular member of the body created or existing within the corporation is legally vested with it.
This being true, it becomes apparent that Ferguson, nor his assigns, had any right to a judgment against the Owl Canon Gypsum Company.
The verdict was against all three of the defendants. The judgment was a joint one and they all join in the appeal to this court.
The rendition of this judgment was certainly error for which it should be reversed if for no other reason.
The entire judgment against several defendants must be reversed as to all, it cannot be reversed as to one and remain as to others. Streeter et al. v. Marshall S. M. Co., 4 Colo. 535; Gargan et al. v. School District No. 15, 4 Colo. 54.
But I am not content with disposing of this case solely upon this ground, because I think it equally positive that the plaintiffs were not entitled to recover against Clemons and Graves, for the reason that I am unable to concede that the evidence shows that Ferguson ever procured a purchaser for the shares of stock offered by Clemons and Graves, either in the article of July or the letter of August 17th. What he did procure was an agreement to purchase from the Owl Canon Gypsum Company certain shares of stock and other real and personal interests, leaving in doubt the period in which such purchase should be consummated, and coupled with the additional condition that payment of the $6,000 should be made at intervals of time conditioned upon an examination of the charter of the mine.
When one seeks to recover for the performance of a con *232 tract, he must see that he has performed the contract which is the basis of his action. Robinson C. M. Co. v. Johnson, 13 Colo. 258.
This is not a case where the agent produced a purchaser and where the principal refused to sell, but the facts show that the principal sold before the production of the purchaser by the agent to an outside party. Exclusive authority was not given to Ferguson to contract for the sale of the stock. The parties themselves reserved the right, and Ferguson admits that they had the right, to negotiate the sale of the stock pending his offer, and even if this were not so the contract and letters do not give the exclusive right to sell to Ferguson, and therefore the defendants themselves might sell without being liable to him unless they sold to a purchaser procured by him. Putnam v. How, 39 Minn. 363 ; Fole v. Sherwood, 41 Minn. 535.
In order to entitle Ferguson to recover in this case it was necessary first that he should show his authority to act as agent either by previous employment or by acceptance of his agency and the adoption of his acts. Certainly he must show that the agency was the procuring cause of the sale. The obligation he assumed as a condition of his right to demand the sum of $1,500, was to bring the buyer and seller to an agreement. The authorities substantially concur in support of this rule. “ Risk of failure was his ; reward would follow success.”
It occurs to me that the doctrine announced in the opinion is in conflict with the doctrine of this court in the case of Babcock v. Merritt, 1 Colo. Ct. Ap. 84. In that case two rules were invoked in support of the conclusion of the court: First, before the broker can be said to have earned his commission, he must produce a purchaser who is read}', willing and able to purchase the property upon the terms and at a price designated by the principal; second, the broker must be the efficient agent or the procuring cause of the sale. The means employed by him and his efforts must result in *233 the salé. He must find' the purchaser, and the sale must proceed from his efforts acting as broker.
If there is in the entire record in this case a particle of evidence documentary or otherwise tending to bring Ferguson within the principles above recited, I have been unable to find it. He did not procure a purchaser able and willing to buy. The property was sold to the individual with whom he had been contracting or negotiating. And the language of this court in that particular case strikes me as being peculiarly applicable to the situation of the parties as presented by the record in this.
In the case of Anderson v. Smythe, 1 Colo. Ct. Ap. 253, this court, by its opinion handed down December 3, 1891, uses this language: “ The law is well settled in this state that when an agent produces a purchaser acceptable to the owner, and able and willing to purchase on terms satisfactory to the owner, the agent has performed his duty, and is entitled to the commission. The rule is well defined and stated to be that the agent is entitled to commissions where the sale really proceeds and is effected through the acts of the agent, though he did not negotiate the sale. * * * If the agent introduces the purchaser or discloses his name to the seller, and through such introduction and disclosure negotiations are begun, and a sale of the property is effected, the agent is entitled to his commission, although the sale be made by the 'owner. * * *' And cases cited. * * * The latter case carries the doctrine of the right of compensation-as far or further than any other case found.” The opinion in that case quotes from Church, C. J., and the majority of the court adopted the opinion, in the following language: “ A person claiming a commission upon a sale of real estate must show an employment, and that the sale was made by means of his efforts or agency; and, although he employs one or more brokers, he may negotiate and sell the property himself without liability to any one for commissions.”
The following is a further quotation from the opinion: “ In regard to the correctness of these principles, there can *234 be no question; but to render them applicable and available the principal fact must be found, — that the parties were brought together, and the transaction made possible, by the instrumentality of the agent.”
I think I can consistently challenge the production, or the introduction into the opinion of this court in the case at bar, a single circumstance that brings this case within the provisions of the principles last enumerated. In the particular case last above recited the parties were not brought together by the agent, so also in this case. In that case the agent did not inform the defendant that the purchaser was a possible purchaser. To quote further, the court said: “ His commission is earned by finding a single purchaser, ready and willing to enter into a valid contract for the purchase upon the terms fixed by the owner, and, having introduced such a one to the owner as a purchaser, he is not deprived of his right to commission by the owner negotiating the contract himself.” * * * And cases cited.
The court say in that case, that so far as appears, the defendant had no knowledge that Blodgett would be a purchaser upon any terms. I am warranted in asking, did Graves and Clemons or The Owl Canon Gypsum Company in this case have any knowledge that Dr. Abel was willing, and ready to purchase, or was ever introduced as a purchaser ?
I deem it unnecessary to cite further authorities in support of the conclusion here reached, that the judgment rendered against the defendants jointly was clearly error, and that the evidence does not support the verdict. That under the allegations of the complaint and the evidence, plaintiffs were not entitled to recover against either of the defendants.
Recovery must be had on the allegations and not on the proof. Tucker v. Parks, 7 Colo. 62; Miller v. Hallock, 9 Colo. 551.
The judgment should be reversed.

Affirmed.