SAMUEL DUBROW, RESPONDENT, v. NICK HORNSTRA, APPELLANT.

Submitted April 8, 1920—Decided December 3, 1920.

If one, who has entered into an agreement with a broker to pay the latter commissions upon the consummation of a sale, wrongfully interferes to induce the vendee to repudiate the contract, or himself refuses to convey, he cannot, by his own wrong, escape liability for the commissions.

---

On appeal from the Passaic District Court.

Before Justices SWAYZE and PARKER.

For the respondent, *Harry H. Weinberger*.

For the appellant, *Andrew Foulds, Jr.*

The opinion of the court was delivered by

·SWAYZE, J. This is an action to recover commissions on the sale of real estate. The defendant agreed to pay five hundred ($500) dollars for the sale of the property to the Central Supply Company, three hundred ($300) dollars when

the first payment of one thousand ($1,000) dollars was completed and the balance of two hundred ($200) dollars as the first three monthly payments were paid "by the buyer of the property as agreed upon." The agreement to pay the plaintiff a commission is dated the same day as a written offer (called an agreement), signed by Hornstra only, to sell the property to the Central Supply Company for six thousand one hundred ($6,100) dollars, payable two hundred ($200) dollars on the day of its date and eight hundred ($800) dollars "as soon as a proper agreement can be made." This seems to have been modified to the payment of one hundred ($100) dollars every three months until sixteen hundred ($1,600) dollars was paid; then a deed was to be given and a mortgage executed for four thousand five hundred ($4,500) dollars. When the time came, in July, 1919, to execute a more formal agreement as the parties evidently contemplated, the sale fell through. Levy, who controlled and acted for the vendee corporation of which he was president, refused to complete because he claimed to have just discovered that Dubrow was to receive the five hundred ($500) dollars commission from Hornstra, in addition to a commission which he had himself paid Dubrow on account of the vendee. Whether Levy was or was not justified in his position is of no moment; he had signed no memorandum and could not be held by the vendor. Nor could Dubrow, on these facts alone, hold the vendor for the commission. The time never arrived for the payment of the commission under the terms of the contract between plaintiff and defendant. The contract was not the ordinary contract to pay a commission for procuring a customer; the contract was to pay for consummating a sale by the passing of title and payment of purchase money; the commission was not payable until the payments were made by the vendee to the vendor. If this were all, the plaintiff should have been nonsuited. It is not all. Within a day or two after Levy, for the Central Supply Company, had declared the sale off, the attorney, who had been acting for him in the examination and passing of the title, Saul E. Scher, entered into an agreement with the vendor, Hornstra, for the purchase and sale

of the property for fifty-four hundred ($5,400) dollars. This amount, it seems probable, was reached by deducting from the sixty-one hundred ($6,100) dollars agreed to be paid by the Central Supply Company, the five hundred ($500) dollars commission and two hundred ($200) dollars that had already been paid Hornstra in cash by Dubrow acting really or ostensibly on behalf of the Central Supply Company. Dubrow now sets up that this arrangement was contrived to defraud him of his commission. This finds support in the fact that Scher agreed with Hornstra to be responsible for any loss that he might have on account of the transaction, and on the day after making his agreement with Hornstra, leased the property to the Central Supply Company. The real issue therefore was whether Hornstra entered into a scheme with Scher to defraud Dubrow of his commission by preventing the consummation by conveyance of the sale to the Central Supply Company. If Hornstra wrongfully interfered to induce the Central Supply Company to repudiate the contract (*Brennan* v. *United Hatters*, 73 *N. J. L.* 729; *Jonas Glass Company* v. *Glass Bottle Blowers' Association*, 77 *N. J. Eq.* 219), or himself refused to convey (*O'Neill* v. *Supreme Council, Am. L. of Honor*, 70 *N. J. L.* 410; *Holt* v. *United Security Life Insurance Co.*, 74 *Id.* 795; *S. C.*, 76 *Id.* 585), he could not by his own wrong escape liability for the commissions and Dubrow would be excused from further performance.

This issue was not decided. Instead, the trial judge, sitting as a jury, said the only question he had to determine was whether or not Dubrow was under contract to receive fees from both sides, and he resolved that point in plaintiff's favor, on account of the "dubious course" taken by the defendant. We are at a loss to know what the dubious course was. Was it selling to Scher after Levy had withdrawn? This of itself could not help the plaintiff. It comes short of a finding that Hornstra wrongfully interfered to induce the Central Supply Company to repudiate the contract, or that Hornstra himself refused to convey.

The finding that Dubrow was not under contract to receive a commission from both sides is immaterial. The question is whether he performed or showed a legal excuse for nonperformance. There is no evidence that he performed as we construe the contract; whether or not he was excused depends upon inferences to be drawn by the judge sitting as a jury, and these he has failed to draw. We cannot assume that he found the facts necessary to support the judgment since he himself said that the only question was whether Dubrow was to receive fees from both sides. His finding was an exoneration of Dubrow from the charge of fraud; it was not a finding of fraud or breach of contract against Hornstra. The trial judge, on the facts he found, should have rendered a verdict for the defendant. The point is sufficiently raised by specifications 12 and 15.

Let the judgment be reversed and the record remitted for a new trial.