## Hartig v. Schrader.

(Decided February 15, 1921.)

### Appeal from Jefferson Circuit Court (Common Pleas Branch, Fourth Division).

1. Brokers—Employment and Authority.—Where an owner puts in the hands of a broker real estate and fixes the compensation of the broker in the event of a sale, and the broker makes repeated efforts to effect a sale but fails, and thereafter the property is withdrawn from the market and the contract between the parties terminated, but subsequently the same broker notifies the owner that he then has a purchaser for the property at the price fixed in the old contract if the terms are satisfactory, and the owner answers fixing the price and terms, the property is again placed in the agent's hands with authority to seek a purchaser.

2. Brokers—Employment and Authority—Commissions.—Where property is placed in the hands of a broker with authority to seek a purchaser upon stated terms, and he finds such purchaser who is ready, willing and able to comply with the terms, he has earned his commission; but there being no definite contract for the amount of his compensation, the law will imply a contract to pay him the value of his services.

3. Brokers—Actions for Compensation—Quantum Meruit.—In an action on a quantum meruit for services rendered it is not necessary to allege a promise to pay but only to set up the facts from which the law will imply the promise.

4. Brokers—Employment and Authority.—The owner of property who has placed same in the hands of a broker but not by a contract of exclusive agency, retains the right to sell the same himself at any time before receiving notice that such agent has found a purchaser ready, willing and able to buy upon the terms named; but the sale contemplated in this rule is either the execution and delivery of a conveyance or the entering into of a binding, written contract which may be enforced.

5. Brokers—Compensation—Sale by Owner.—A sale by the owner which will deprive the broker of compensation, must be a completed, valid sale, or an enforceable written contract, consummated before having notice that the broker has a purchaser, and the owner can not so deprive him by merely entering into an oral or other unenforceable agreement to sell the property.

6. Brokers—Compensation.—If the owner receives notice that the broker has found a purchaser after he has verbally agreed with another purchaser to sell and convey him the property, but before he has executed and delivered such conveyance or entered into any binding, written contract, the broker is entitled to compensation.

DODD & DODD and TYLER BARNETT for appellant.

BINGHAM, PETER, TABB & LEVI for appellee.

OPINION OF THE COURT BY TURNER, COMMISSIONER—Affirming.

On and prior to August 7, 1914, appellant, Charlotte Hartig, was the owner of certain real estate at Third and Walnut Streets in Louisville. On that day, through her agent, Wuesthoff, she placed same in the hands of appellee, Schrader, for sale at the price of $36,000, fixing his commission at $1,000 if he effected the sale.

Schrader, after several futile efforts, was unable to bring about a sale, and in 1915 the property was withdrawn from the market and the agreement between the parties terminated.

Prior to this, and in 1904, Mrs. Hartig executed to Wuesthoff, of Milwaukee, a full and complete power of attorney authorizing him to mortgage and control her said property and to sell and convey the same and execute deeds therefor, which power of attorney is of record in Jefferson county.

In this situation on June 6, 1916, Schrader sent the following letter to Wuesthoff at Milwaukee:

"I have party now that would consider the Third and Walnut Street property at $36,000 providing easy terms covering six years would be considered by you. Let me know the least cash payment you would exact—with the

annual payments and least interest charges and I will put it up to them.''

On June 8th Wuesthoff sent to Schrader the following answer to that letter:

''In reply to your inquiry I wish to state that I would make the following terms:

''$11,000 cash; $25,000 mortgage at 5 per cent., of which $5,000 would be payable in two years and $20,000 in six years from date of sale.''

Then on the afternoon of June 12th Schrader sent the following telegram to Wuesthoff:

''The price and terms of your letter of eighth is accepted. Letter confirming same will follow.''

This telegram was received by Wuesthoff between two and three o'clock of the afternoon of that day; and shortly thereafter Wuesthoff, before three o'clock of that afternoon, sent to Schrader the following telegram:

''Sorry; have sold the property here this morning.''

The undisputed evidence is that on the morning of June 12th Wuesthoff, acting as agent for Mrs. Hartig, had orally agreed with another party in Milwaukee to sell and convey the property at Third and Walnut but made no conveyance nor entered into any written contract therefor, but did, in compliance with his oral agreement on the following morning, June 13, 1916, complete the sale and convey the property to such other purchaser.

This is an action by Schrader, a licensed real estate agent, against Mrs. Hartig on a *quantum meruit* for the value of his services rendered under the agreement of June, 1916, and the court, at the conclusion of all the evidence, gave the jury a peremptory instruction to find for the plaintiff the value of his services, about which there was no contrariety of evidence.

It is the contention of appellant that the letter of Schrader and the answer thereto of Wuesthoff established no contract relations between the parties and consequently did not authorize Schrader to seek a purchaser or sell the property and there could therefore be no implied promise to pay for his services. The argument is that the letter of Schrader was a mere inquiry as to the price of the property and the terms that would be acceptable, and that the answer of Wuesthoff was only a response giving the price and the terms, and in no sense may be construed as authorizing Schrader to seek a purchaser on those terms.

But in the light of the former contract relations between these same parties with reference to this same property, such interpretation can not be given to these letters. When we consider that this property had formerly been placed in Schrader's hands for sale; that his compensation in the event of a sale had been definitely fixed, and that he had made repeated efforts to effect a sale but had failed, and that the owner had thereafter withdrawn the property from the market and terminated the contractual relations between them; and that Schrader had notified her agent that he now had a purchaser who would consider buying the property at the price fixed in the old contract if the terms of payment and the interest on deferred payments were satisfactory, and such agent answered fixing the price and terms, it is evident that it was contemplated on both sides that the property was again placed in Schrader's hands with authority to seek a purchaser upon the terms named.

To give any other effect to them would be to ignore the conceded fact that Wuesthoff knew Schrader was in the real estate business; that he knew of his former efforts to sell this property and that he knew under the former contract he had expected compensation therefor, and so knowing these facts and knowing from the letter of June sixth that Schrader had a prospective purchaser, it must have been in his mind that Schrader would again undertake to sell the property upon the terms named, and that when he did he would expect a reasonable compensation for his services.

That Wuesthoff himself gave that interpretation to these letters is apparent in his letter of June 14th to Schrader wherein, after telling Schrader that he could not recognize the sale made by him, he further says:

"When I gave you the terms upon which I was willing to sell, I did not give you any exclusive right nor any time option. I naturally reserved the right to dispose of the property myself if any opportunity presented itself."

From this it will be seen that simultaneously with these transactions Wuesthoff only claimed that he had not given Schrader an exclusive right to sell the property, but there was no claim that he had not given him authority to look for a purchaser.

Therefore, from this correspondence and the circumstances surrounding the parties, it must be held that Schrader was authorized to seek a purchaser; but having no definite contract for the amount of his compensation,

must be relegated to an implied promise to pay him the value thereof.

It is said, however, that there is no promise alleged in the petition to pay for these services and that therefore there can be no recovery.

As stated this is an action on a *quantum meruit* and seeks the value of plaintiff's services upon an implied contract; and in such actions where the law implies a promise to pay for services rendered it is not necesssary to allege a promise to pay, but only to set up the facts from which the law will imply the promise; Newman's Pleading, sections 319, 551D; Elliott on Contracts, sec. 1358.

Finally it is argued by appellant that as the letters between Schrader and Wuesthoff certainly created no exclusive agency in Schrader, appellant had the right at any time before Schrader effected a sale to sell the property to any purchaser which Schrader had not produced or induced to become interested in the property, and that therefore Wuesthoff's oral sale on the morning of June 12th before he had notice from Schrader that his purchaser had accepted the terms, was in the full exercise of his rights in the premises, and being made before such notice, there is no liability to Schrader for a commission.

Undeniably the rule is that an owner of property who has placed it in the hands of a real estate agent but not by a contract of exclusive agency, retains the right to sell the same himself before such agent shall have produced a purchaser ready, willing and able to buy same upon the terms named; in fact it has been held in many places that even an exclusive agency does not deprive the owner of this right, but will be interpreted to mean only that the owner will not place the property in the hands of any other agent.

But it is conceded here that there was no exclusive agency and the question is, had Wuesthoff, before receiving Schrader's telegram of June 12th, made a sale of that property to another within the meaning of the rule of law that an owner who has not created an exclusive agency may sell his property before the real estate agent has notified him that he has a purchaser ready, willing and able to take the property upon the terms fixed? In other words, had Wuesthoff completed a sale, or entered into such obligations as bound him or his principal to make

the conveyance of this property, before he received Schrader's telegram?

The sale of land in this state means either the execution and delivery of a conveyance therefor in the manner prescribed by statute, or entering into a binding, written contract which may be enforced in the courts. Under our statute of frauds the mere oral agreement of parties, one to buy and the other to sell real estate upon certain terms, is of no binding force whatsoever upon the seller; the law prescribes the manner in which he may be divested of the title to real estate, and it likewise provides that his oral engagements as to same shall have no binding force.

The oral agreement between Wuesthoff and the Milwaukee purchaser in no sense bound either Wuesthoff or his principal to convey the property to that purchaser, and before such conveyance was made Wuesthoff confessedly had notice that Schrader had a purchaser who had accepted the terms in his letter; and not being bound to the proposed Milwaukee purchaser, could he, by complying with the terms of his oral agreement after having notice of Schrader's purchaser, deprive Schrader of his right to commissions?

Manifestly neither Wuesthoff nor his principal was legally bound either to make the conveyance to the Milwaukee man or suffer in damages if they declined to do so, and assuming that they understood this, they apparently consummated the agreement with the Milwaukee purchaser in recognition of the fact that they must thereafter account to Schrader for his commission.

That a sale by the owner of real estate who has placed same in the hands of a broker must be a completed, valid sale, consummated before having notice that the broker has a purchaser, so as to defeat the right of the broker to commissions, seems to be the recognized rule and is fully in accord with reason and justice.

If an owner might defeat his broker in the collection of commissions by merely entering into an oral agreement with another to sell his property, which agreement was in no sense enforceable against him, an easy method of escaping such payment would be afforded.

The case of York v. Nash, 42 Oregon 321, was an action by a real estate broker for his commissions. Among other defenses it was claimed that, before the defendant had notice of the purchaser procured by the plaintiff, he had sold the property to another. It developed, however,

that he had only given an exclusive option on the property, and the court in disposing of this defense said:

"If, after the broker has found the purchaser, the owner sells to another person, without knowledge thereof, the broker is not entitled to his commission; Darrow v. Harlow, 21 Wis. 306 (94 Am Dec. 541); Baars v. Hyland, 65 Minn. 150 (67 N. W. 1148); Gunn v. Bank of California, 99 Cal. 349 (33 Pac. 1105,; Wylie v. Marine National Bank, 61 N. Y. 415. This doctrine, however, can not be invoked as a defense to this action, because defendant had not sold or made a valid contract to sell prior to the time the purchaser secured by the plaintiff was introduced to him and expressed not only his willingness but his anxiety to take the property. The arrangement between the defendant and Lane would not constitute a sale, within the meaning of the rule stated, nor operate as a revocation of the plaintiff's authority. It was a mere verbal understanding, without any consideration, and had none of the elements of a sale or of a contract for a sale."

In Owl Canon Gypsum Co. v. Ferguson, 2 Colo. App. 219, a defense somewhat similar to that interposed here was relied upon, and the court, after finding that no binding contract had been concluded by the owners before they were informed by their broker that he had found a purchaser, said:

"The right of the principal to sell his own property at any time prior to any sale to be made by an agent where no exclusive authority is given to the broker, and no time is fixed within which he shall have the absolute right to operate, is tolerably well settled by the authorities. The same cases, however, hold that wherever the broker is authorized to sell and he finds a purchaser before any sale is completed by the principal, the latter must account for the promised commissions unless there be something in the contract which relieves him from liability. Wray v. Carpenter, 16 Colo. 271."

See also Wright v. Waite, 126 Minn. 115, and note to Bluthenthal v. Bridges, 24 L. R. A. (N. S.) 279.

Manifestly the owner can not by a mere oral engagement to sell his real estate which is not binding upon him, defeat his broker in the collection of his commissions where the broker has complied with his undertaking and notified the owner before the latter has in compliance

with his oral engagement conveyed the property to another.

Judgment affirmed. Whole court (except Judge Clarke) sitting.