61 N.J. Super. 424 (1960)
161 A.2d 284
PAULA VON TILL POTTS, D/B/A SKILLMAN AND SKILLMAN, REALTORS, PLAINTIFF-RESPONDENT,
v.
WILLIAM BRYCE THOMPSON, IV, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued January 26, 1960.
Decided May 27, 1960.
*425 Before Judges PRICE, GAULKIN and FOLEY.
*426 Mr. Theodore D. Vreeland argued the cause for the plaintiff-respondent.
Mr. John Francis Cannon argued the cause for the defendant-appellant.
The opinion of the court was delivered by GAULKIN, J.A.D.
Defendant appeals from a judgment of the Law Division in favor of the plaintiff in an action for real estate broker's commission.
Defendant (himself a real estate salesman) and his mother owned a house in Princeton. Defendant circularized plaintiff and other brokers offering the property for sale for $34,000 with a commission of 5%. In addition, defendant himself advertised the property for sale in newspapers.
Mildred C. Light, an employee of plaintiff, showed the property to Dr. and Mrs. Rosenhaupt. They offered $31,000, "contingent on contractor's estimate for necessary improvements," which defendant rejected.
On May 26 one Lear answered an advertisement, which defendant had placed in the New York Times, and inspected the premises. On May 27 defendant telephoned Mrs. Light and told her that Lear had offered $31,000 and asked her to see what the Rosenhaupts planned to do and to see whether she could "get the Rosenhaupts up." Early on May 28 defendant called Mrs. Light and told her that Lear was willing to pay $32,000 and inquired whether the Rosenhaupts would pay $34,000. She asked for time to communicate with them, saying she thought she would be able to get $34,000. At 10:12 A.M. Mrs. Light telephoned Mrs. Rosenhaupt and told her that if she wanted the house she "would have to come up with $34,000 and come up with it fast." However, in a conversation between defendant and Lear that commenced at 10:38 A.M. Lear offered $33,000 and defendant agreed to take it. At 10:50 A.M. Mrs. Rosenhaupt secured her husband's permission to bid $34,000 and notified Mrs. *427 Light in a telephone conversation which began at 11:05 A.M. Immediately thereafter Mrs. Light called defendant, who then told her that he and Lear had already agreed upon a sale for $33,000.
Defendant mailed a contract at 11:25 A.M. to Lear in New York. At 12:33 P.M. the $3,300 deposit agreed upon by Lear in the telephone conversation arrived in Princeton by telegraph. About 2 P.M. plaintiff prepared a contract to purchase defendant's property, obtained the signature of the Rosenhaupts, and thereafter tendered it with a deposit check of $3,400 to defendant, but the tender was refused. It is interesting, though not material, to note that thereafter Lear assigned his contract to the Rosenhaupts and the Rosenhaupts took title.
Plaintiff then instituted this action, which defendant defended upon the ground that prior to receipt of the Rosenhaupt offer he had sold the property to Lear. Plaintiff countered with the proposition that since the agreement with Lear had not been reduced to writing until after defendant knew of the Rosenhaupt offer, plaintiff was entitled to the commission. The court so held.
Plaintiff concedes that if a sale of the real estate is made by the owner to his own purchaser and there is not sufficient time between the sale by the owner and the broker's production of a buyer to notify the broker of the prior sale, then a broker situated as plaintiff is here is not entitled to any commission. 1 Corbin on Contracts §§ 50, 67 (1950); Romine v. Greene, 13 N.J. Super. 261, 265 (App. Div. 1951); see also Restatement, Agency 2d § 106; § 435, comment (c); § 449; § 453, comment (d); cf. Rose v. Minis, 41 N.J. Super. 538, 543 (App. Div. 1956). Here it is apparent that the Thompson-Lear sale was "made so short a time before the broker's performance that reasonable opportunity to notify the broker was not afforded under the circumstances." Romine, supra, 13 N.J. Super., at page 265.
Plaintiff's position appears to be that there was no "sale" here by defendant, within the meaning of this rule, because *428 defendant had not yet entered into a written agreement for sale when plaintiff told him the Rosenhaupts would pay $34,000. The trial court agreed with the proposition that a written contract is essential, and it was upon this basis that judgment was entered in plaintiff's favor.
Romine v. Greene, supra, does contain language which justifies the position taken by the plaintiff and by the trial court. In that case the court said (13 N.J. Super., at page 265; emphasis ours):
"However, a broker who performs his undertaking cannot be deprived of his commission merely because the owner is engaged at the time in negotiations for sale to a purchaser of his own procuring, even though such negotiations ripen into an actual sale at a later time. A mere preliminary discussion between the owner and a prospective purchaser, or a tentative agreement looking to a sale, or an oral agreement for a sale, is not sufficient; there must be a binding agreement for the sale. Hartig v. Schrader, 190 Ky. 511, 227 S.W. 815 (Ct. of App. Ky. 1921); Hawks v. Moore, 27 Ga. App. 555, 109 S.E. 807 (Ct. of App. Ga. 1921).
The formal written contract was executed * * * two days after performance by the broker, and it constitutes no bar to the plaintiff's right to recover his commission. * * * Since this plaintiff had no notification of a sale prior to his performance, the defendant * * * is liable for the commission unless he can prove a binding agreement for sale made so short a time before the broker's performance that reasonable opportunity to notify the broker was not afforded under the circumstances."
An examination of the record in the Romine case indicates that the italicized words "or an oral agreement for a sale" may have been dictum. It appears that when Romine produced his buyer Mrs. Greene's negotiations may have proceeded only to the point where they amounted to no more than "[a] mere preliminary discussion between the owner and a prospective purchaser, or a tentative agreement looking to a sale * * *." (Romine, at page 265.) If so, this was enough to support the result reached in Romine, and the further statement in the opinion that "an oral agreement for a sale, is not sufficient; there must be a binding agreement for the sale," was unnecessary.
*429 We see no basis in law or in reason for making a distinction as to what constitutes a "sale" by an owner and a "sale" by one of several competing brokers, especially when, as here, the broker knows the owner himself to be a real estate salesman actively trying to sell the property. As long ago as 1869 our Supreme Court said, in the much cited case of Vreeland v. Vetterlein, 33 N.J.L. 247, 249 (Sup. Ct. 1869), "[w]here the property is openly put in the hands of more than one broker, each of such agents is aware that he is subject to the arts and chances of competition." As between competing brokers, ordinarily it is not the first one who produces a binding contract who earns the commission but rather the first one who produces a buyer ready, able and willing to sign a binding contract or to buy upon terms acceptable to the owner. "[T]he necessity of having the contract negotiated reduced to writing, depends upon the ultimate result of the transaction. That is, the broker, at his own risk, has the option of either securing a binding written contract from his customer or of producing a person who is not only then, but at all times thereafter, ready, able, and willing to carry out the deal in hand." 8 Am. Jur. Brokers § 173, at p. 1089 (1937). The earliest buyer's failure to perform may obligate the owner to accept the buyer produced by the later broker, if that buyer is still ready, able and willing to perform. That, we take it, is all that is meant by the statement (emphasis ours): "The law is well settled that where several brokers are employed with full knowledge by each of such employment * * * the broker through whose instrumentality the sale is completed is entitled to commissions." Carrier Corp. v. Bedworth, Inc., 125 N.J. Eq. 163, 165 (E. & A. 1938); Carpenter v. Overland Tire Co., 102 N.J.L. 196, 202 (E. & A. 1925); Annotation, 12 A.L.R.2d 1410 (1950); Annotation 44 L.R.A. 321, 337-346 (1913); Restatement, Agency 2d § 445, at pp. 347-349; § 448, comment (e), at p. 358; cf. Calabrese v. Adelman, 7 N.J. Misc. 406 (Sup. Ct. 1929); Dubrow v. Hornstra, 95 N.J.L. 288 (Sup. Ct. *430 1920). In other words, the right of broker A to commission is defeated if broker B produces a buyer before broker A, even though broker B's buyer only agreed orally while broker A tenders his buyer's written contract. We fail to see why the result should be different when the owner is one of those competing to make the sale, whether he stands in the shoes of broker A or broker B.
In Romine the court cited only two authorities for the proposition that a written contract is essential, Hawks v. Moore, 27 Ga. App. 555, 109 S.E. 807 (Ct. App. 1921), and Hartig v. Schrader, 190 Ky. 511, 227 S.W. 815 (Ct. App. 1921). The Hawks case does not give any facts. Apparently there was no more in the case than "[a] mere preliminary discussion between the owner and the prospective purchaser, or a tentative agreement looking to the sale," which the court said (109 S.E., at page 808) "under the evidence, will not deprive the agent of his rights to his commission." (Emphasis ours) Furthermore the court was construing the word "selling" contained in a Georgia statute, and since the court cited no reason or authority for its statement that this word "contemplates that the owner of the land and the purchaser had entered into a contract that is mutually binding and enforceable," it may be that the court was applying a rule peculiar to Georgia.
The Hartig case relied upon York v. Nash, 42 Or. 321, 71 P. 59 (Sup. Ct. 1903), and on Owl Canon Gypsum Co. v. Ferguson, 2 Colo. App. 219, 30 P. 255 (Ct. App. 1892). However, in York the owner had merely given an option to his prospective customer; and in Owl Canon the majority held the defendant owners knew the broker had a buyer before they sold to their own customer. The Hartig opinion [190 Ky. 511, 227 S.W. 817] also says "[s]ee * * * Wright v. Waite, 126 Minn. 115, 148 N.W. 50 [an option case] and note too Bluthenthal v. Bridges, 24 L.R.A. (N.S.) 279 [which does not deal with the point here in question]." In short, the authorities relied on in Hartig *431 seem to us not to support the conclusion reached in that case that a written contract is essential.
The only justification based on reason, as distinguished from authority, offered by the court in Hartig for the result which it reached was that "if an owner might defeat his broker in the collection of commissions by merely entering into an oral agreement with another to sell his property, which agreement was in no sense enforceable against him, an easy method of escaping such payment would be afforded." With the greatest respect for the Kentucky court, we are not persuaded by that reason. We note that in Harris v. Conway, 343 P.2d 1069, 1073 (Okl. Sup. Ct. 1959), the court discussed Hartig and Hawks and deliberately refrained from following them, basing its decision on another ground.
Not only would it be inconsistent to require a written contract between the owner and his customer when we do not require one between the owner and the broker's customer, but to adopt a rule which would compel an owner to plead the statute of frauds, no matter how distasteful such a plea might be to him, would be inconsistent with the desire of our courts to foster commercial morality. The dubious ethics of pleading the statute of frauds has been the subject of frequent comment. Louis Schlesinger Co. v. Wilson, 22 N.J. 576, 582 (1956); Deevy v. Porter, 11 N.J. 594, 595-596 (1953); Kooba v. Jacobitti, 59 N.J. Super. 496, 500 (App. Div. 1960); Stevens, "Ethics and the Statute of Frauds," 37 Corn. L.Q. 355 (1952). Certainly it is not the policy of our law to assume that every defendant will raise this defense. Weinstein v. Clementsen, 20 N.J. Super. 367, 371 (App. Div. 1952). We should be reluctant to place a pecuniary penalty (the payment of commission for an offer which honor forbids him to accept) upon an owner who declines to plead the statute of frauds in defense of an agreement to sell complete in all respects except writing. It seems to us that the law should protect, as far as possible, those whose spoken word is as good as their bond.
*432 For the reasons stated, judgment must be reversed and the case remanded with directions that judgment be entered in favor of the defendant. No costs.