LEWIS v. DAHL (BUTT et al., Garnishees).

No. 6813.   Decided August 10, 1945.   (161 P. 2d 362.)

See 12 C. J. S., Brokers, sec. 85; 8 Am. Jur., 1094.

*Wesley G. Howell* and *Emerson C. Willey*, both of Salt Lake City, and *I. E. Brockbank*, of Provo, for appellants.

*H. G. Metos*, of Salt Lake City, for respondent.

*Grant Macfarlane*, of Salt Lake City, amicus curiae.

McDONOUGH, Justice.

Appellants challenge the findings of fact, conclusions of law and judgment, whereby respondent real estate broker recovered a real estate commission and attorney's fee on a broker's listing contract. It is conceded that if judgment

against defendant Dahl (who signed the listing agreement) is reversed, the judgment against the garnishee defendants who purchased the real estate described in the listing, automatically falls.

Respondent, a broker, obtained a listing contract from appellant M. J. Dahl which contains a provision that

"if said property or any part thereof is sold * * * during said term by myself * * *, I agree to pay you the Salt Lake Real Estate Board commission on such sale."    •

This listing agreement by its terms expired on August 14, 1944. On July 17, 1944, respondent instituted this suit to recover a commission whereby he alleged that appellant Dahl had sold the listed property to Jesse N. Butt and Francis Butt (garnishee defendants) for $27,800. The purported purchasers were immediately served with a writ of garnishment. Their answer as garnishees was traversed, and after trial, judgment was entered against them as garnishees as well as against the defendant Dahl.

The findings of fact do not contain any express declaration of the execution of any written contract of sale during the listing period. There is merely a general recital that between June 15, 1944, and July 15, 1944, defendant "sold said property" to Jesse N. Butt and Francis Butt for $17,500 and delivered possession of said property to the purchasers on or about July 15, 1944, and that

"delivery of said deed was delayed until September 21, 1944, for the purpose of defeating plaintiff's right to his commission."

It is conceded that during the listing period the Butt brothers were negotiating for the purchase of the property, and that plaintiff had nothing to do with procuring said purchasers for defendant Dahl. The deed from Dahl and wife to the Butt brothers is dated September 21, 1944, and bears an acknowledgment as of that date. The checks allegedly given and cashed for the amount of the purchase price are dated September 21, 1944.

Appellants assail the judgment principally on the ground that there was no competent evidence of any written contract of sale nor any other binding contract during the listing period, such as could be enforced by judicial proceedings. They aver there was no proof of any consummation of sale during the listing period, and hence no "sale" within the meaning of the broker's listing contract. The question which confronted the district court and which likewise confronts us is: Was there a "sale" of the land during the listing period? If the sale was made after August 14, 1944, since plaintiff did not procure the purchasers for Dahl, respondent could not recover a commission. The cases cited which allow a recovery of a commission where the broker procured a purchaser but the owner delayed closing the deal until after expiration of the listing period, have no application here.

There is, in our opinion, no competent proof of the existence of a written contract of sale between M. J. Dahl and wife on one hand as sellers and Jesse N. Butt and Francis Butt as buyers, prior to September 21, 1944. This fact appears to be implied from the argument of respondent's counsel that no written agreement of sale need be shown. Nor is there any competent evidence that the deed dated and acknowledged September 21, 1944, was postdated. The certificate of acknowledgment by the notary public is prima facie evidence of the facts of acknowledgment therein recited. There was no effort to impeach the recitals in the deed nor those contained in the acknowledgment. Apparently, the checks dated September 21, 1944, were not cashed prior to that date.

The testimony of plaintiff is to the effect that he visited the ranch on July 16, 1944, for the purpose of showing it to a prospect; that he had previously presented an offer for $18,500 to Dahl (which was over $9,000 less than the price listed) ; that on the day in question he saw the two Butt brothers and one McKinney putting up hay; that plaintiff did not speak to them; that he never saw them move onto the property; that he saw Jesse N. Butt in Lehi the follow-

ing day, which was the day suit was filed; that said Jesse N. Butt stated before being served with a writ of garnishment that he and his brother had bought the ranch for $17,000, and that if Dahl did not go through with the deal it would "cost him plenty"; that Butt said he had a list of "stuff that goes with the place"; and that when he talked further with plaintiff he told plaintiff he had arranged with the bank to have the money ready to pay to Dahl just as soon as the latter could show good title.

Dahl was not present during any of said conversations, and the purchasers denied in substance and effect that any such assertions were made, as did also the process server whom plaintiff employed to serve the writ of garnishment. Plaintiff failed to produce the process server whom he stated could verify his testimony. The only conversations between plaintiff and Dahl related by plaintiff were in substance as follows: That after suit was instituted Dahl came to plaintiff's office in Salt Lake City and said,

"I had the ranch sold, but you serving the Butts blowed up the deal." That thereafter plaintiff went with defendant to see one Peterson who had offered $18,500 and who later raised his offer to $23,500; but that on August 8th plaintiff refunded the deposit of $500 to Peterson because Dahl stated that he would not accept Peterson's offer of $23,500.

Obviously, if Dahl had entered into an enforceable written contract with the Butts, the deal could not have been rendered unenforceable by the service of the writ of garnishment. Defendant went with plaintiff to see Peterson about 10 days or 2 weeks after the heated argument over the service of the writ of garnishment on the Butt brothers. None of the offers presented to Dahl was for the listed price. Assuming that the offer of $23,500 was a bona fide offer, nevertheless since it was less than the amount at which Dahl had agreed to sell, he was not obligated to accept such offer even if it was an amount in excess of the offer submitted by the Butt brothers. Dahl's refusal to accept the offer of $23,500 on July 31st, standing alone, would not constitute proof that he had theretofore entered into a bind-

ing contract of sale, and certainly such refusal would not be proof of the existence of a written contract.

The comments of the trial court at the close of the hearing on the traverse of the answer of the garnishees, indicate that the court did not believe at that time that there was any written contract prior to expiration of the period of listing:

"Well, I am pretty definitely convinced that there was a deal between these men prior to the expiration of the [listing] contract. I think—may I say it was an oral situation and understanding * * * But, there were negotiations, and some contemplated deal, and this happened altogether too quickly after the expiration of the contract to be anything else * * *."

The sole question to be determined is whether there is competent evidence of a *sale* prior to expiration of the listing. Unless there was a *sale* within the meaning of the listing contract it makes little difference if there was some understanding orally made that Dahl would give the Butt brothers the opportunity to purchase after the listing agreement had spent its force or if some other deal was entertained. Since both appellant Dahl and the respondent have quoted the following language from *Burt* v. *Stringfellow*, 48 Utah 330, 159 P. 527, 530, they obviously concede it to be applicable:

"* * * While it is true that the defendants had no right to interfere with the sale or to collude or connive with a prospective purchaser to prevent a sale within the time limit and thereafter sell the property themselves and thus escape payment of a commission to plaintiff, yet they were not precluded by law or otherwise from seeking a purchaser of their property and if they did so in good faith, they could sell the same at any time after the time had expired within which plaintiff was required to purchase or sell the property * * *."

In the foregoing case, the prospective purchaser was procured by the broker and the contact with the ultimate buyer was made with the sellers through the services of the broker, but the contract of employment contained no clause for consummating a sale with such prospect after the expira-

tion of the listing as if it had been done during the listing period. The case of *Burt* v. *Stringfellow* in effect holds that during the listing period the owner is not precluded by his contract with the broker from negotiating with prospective purchasers, and an owner is not required to wait until the listing expires before entertaining negotiations. In the instant case, unless there was actually a *sale* proved by competent evidence, as distinguished from negotiations leading up to a sale, the judgment cannot stand; for defendant did not consummate a sale with any prospect presented by the plaintiff.

There are cases involving a similar type of listing contract in which the owner agreed to pay a commission if he made a sale during the listing period. To the effect that "sale" as used in such contract means payment of the purchase price and the conveyance of title or the execution of a binding contract of sale, see *Piatt & Heath Co.* v. *Wilmer*, 87 Mont. 382, 288 P. 1021. See also *Daugherty* v. *Smith*, Tex. Civ. App., 192 S. W. 1131; *Hartig* v. *Schrader*, 190 Ky. 511, 227 S. W. 815, and *Hawks* v. *Moore*, 27 Ga. App. 555, 109 S. E. 807.

We are of the opinion, for reasons more fully disclosed hereinafter, that the word "sale" in a real estate broker's listing contract, which renders the owner liable for payment of a commission in the event the owner himself makes a *sale* during the term of the listing, means the conveyance of title to the purchaser for a valuable consideration consisting of the purchase price, or the execution and delivery of a valid and enforceable contract of sale whereby some estate in the land, legal or equitable, passes to the purchaser. Admittedly, if the broker presents only an oral offer to purchase, he is not entitled to a commission until or unless that offer is put in writing and the owner has a duty to accept such offer under the terms of the listing, or unless or until such transaction is consummated; for no one is. bound by a mere oral offer. If the owner enters into an oral agreement to sell which is not consummated by payment of the purchase price and delivery of the deed or by

execution of a binding contract of sale, there is no assurance that the owner will ever collect the purchase price. Until the owner receives a written offer or a written acceptance which he can enforce as a valid and binding contract, or until there is a sale which is recognized by the statute of frauds, there is no sale within the meaning of the above quoted provision in the broker's listing contract.

As applied to land, the word "sale" implies the creation of an estate in excess of a leasehold, by the act of the owner. The statute of frauds specifies that

"No estate or interest in real property, other than leases * * * shall be created, granted, assigned, surrendered or declared otherwise than by act or operation of law, or by deed or conveyance in writing subscribed by the party creating, granting * * * or declaring the same * * *." Sec. 33-5-1, U. C. A. 1943. "Every contract * * * for the sale, of any lands, or any interest in lands, shall be void unless the contract, or some note or memorandum thereof, is in writing subscribed by the party by whom the * * * sale is to be made * * *." Sec. 33-5-3, U. C. A. 1943.

In *Ober* v. *Schenck*, 23 Utah 614, 65 P. 1073, 1075, this court was called upon to construe the meaning of "sale or transfer" as applied to property during the term of a lease, and it was stated that "transfer" relates to transfer of title, "selling being but one mode of transferring property."

In *Bailey* v. *Henry*, 125 Tenn. 390, 143 S. W. 1124, 1127, it is stated that "sale" means alienation of land, and while the statute of frauds does not prevent the making of an oral contract, it does prevent the enforcement of any oral agreement by judicial proceedings when properly invoked. Respondent's position here, apparently, is that there is some evidence of an oral agreement which was ultimately consummated, and since no attempt was made to repudiate the alleged oral agreement during the listing period, a "sale" was made prior to expiration of the listing. But this is insufficient under the terms of the contract of the parties. As hereinabove stated, there is no evidence that any writing was executed whereby the parties were bound to perform and no part of the purchase price is shown to have

been paid during that period. The testimony of plaintiff indicates that the ultimate purchasers did not acquire possession until after expiration of the listing agreement.

As to the argument that there was sufficient part performance shown of an oral agreement to convey, we need only say that under the decisions of this court no such part performance, if any, was proved. There is no competent evidence that possession was surrendered to the Butt brothers prior to August 14th. The absence of the owner from the property and the presence on it of one who ultimately becomes the grantee, standing alone, does not prove transfer of possession, nor any agreement to sell. The cutting and stacking of hay or any other harvesting of crops, would not amount to proof of an oral agreement to sell, nor any part performance thereof. The reason is that such acts might well be performed under a lease, or, as garnishees testified, under a contract of employment. To constitute part performance so as to take a case out of the statute of frauds there must be some substantial performance, and if there is a claim of valuable improvements, they must be substantial and not such as might be made under a tenancy agreement. See *Hargreaves* v. *Burton,* 59 Utah 575, 206 P. 262, 33 A. L. R. 1481. An oral agreement of sale and purchase can only become enforceable when there has been some substantial part performance sufficient to take the case out of the statute of frauds. The sale is not made until events make the oral agreement enforceable.

The proof of a binding written contract of sale or a sufficient part performance of an oral agreement to convey, such as would make the agreement enforceable during the listing period, is entirely lacking in this case. Until the purchaser is bound, there is no sale, and the length of time during which negotiations are conducted which finally lead up to the sale, is immaterial. Until or unless there is a sale within the term covered by the listing, there can be no right to a commission.

The judgment is therefore reversed as to all appellants and the cause is remanded to the district court with direc-

tions to enter judgment in favor of defendant M. J. Dahl, and in favor of the garnishee defendants, and against the plaintiff and respondent. Costs to appellants.

WOLFE, J., concurs.

LARSON, Chief Justice.

I concur in the result arrived at by Mr. Justice McDonough. But I reach this conclusion by a different rationale. The broker has a contract which permits him to earn a commission by finding a purchaser who is able, ready and willing to buy under the terms fixed by the listing; or by producing a person who does buy under other terms accepted by the seller; provided that in the first case the would-be purchase is produced, or in the second case the sale is made, during the life of the listing. This is the obligation the contract imposes on the broker. He is not entitled to a commission until he has performed his obligations under the contract, unless he is prevented from performance by the act of the seller. The contract does not forbid the seller from seeking purchasers, or negotiating sales, or even making sales independently of the broker. In fact it recognizes his right so to do, by providing that if during the life of the contract the owner sells the property independently of the efforts of the broker, the broker is entitled to a commission. Why? Because the owner has then relieved the broker from performance of his obligations, because by such action, he has prevented the broker from performing by effecting a sale. Since the owner cannot deliver the article to be sold, he is in the same position as if the broker had produced a buyer with the cash, in accordance with the terms of the listing and the owner had refused to sell. The broker, no more than any other man is required to do useless things. This is the only sound basis for the provision in the contract granting a fee to the broker if the owner makes a *sale* during the period of the listing.

In this case the broker never did produce a buyer who would pay the list price. Had he done so the owner would

have been under the necessity of either making the sale or of refusing to keep his contract. In either event the broker would have been entitled to his fee. Had the owner sold to another or put himself in a position where he could not in law perform his obligation to convey under the contract, he could not urge nonperformance by the broker as a defense to a claim for the fee. But as long as the owner legally had it in his power to convey to any qualified purchaser produced by the broker, the broker has not been interfered with, and must produce his purchaser to draw his fee. Had Lewis produced a purchaser, Dahl may readily have accepted the offer, conveyed the property, and taken his chances on any claims which might have been made by the Butts. Since we have held that the evidence does not show a conveyance of title by Dahl, nor an enforceable contract of sale or for a conveyance, upon the record Butts could assert no valid claim against Dahl.

Since the evidence does not establish that Dahl had conveyed the property nor put himself in any position that in law would prevent or hinder him from conveying to any qualified purchaser produced by the broker, nor did he refuse to convey to any such purchaser, it follows that the broker is not entitled to a commission.

TURNER, Justice (concurring).

Is the plaintiff entitled to a sales commission under the contract entered into between the plaintiff, a real estate broker, and the defendant Dahl, the property owner, or is plaintiff entitled to damages for breach of contract by defendant? These are the paramount issues of this case. Plaintiff is entitled to a sales commission if he produced a buyer ready, willing and able to buy according to the terms of the listing agreement. Plaintiff is entitled to a commission if, during the life of the contract, the property was sold by the owner, and plaintiff is entitled to damages for breach of contract, if during the life of the contract, it was breached by the owner so that the broker was prevented from earning a commission. In other words, if the owner

created a condition which prevented or prohibited plaintiff from performing the contract, then the owner is liable in damages.

To recover for performance, plaintiff would have to prove by competent, credible evidence that he had a purchaser who was ready, willing and able to perform. To recover a commission for a sale made by the owner, proof of the transaction necessarily would have to be positive, both competent and credible, and just as worthy of belief as in the first instance. To recover damages for prevention of compliance, the evidence required for recovery likewise would have to be competent and credible. I am of the opinion that in order for the broker to recover where he claims the owner has prevented his performance by selling, and by agreement with the prospective purchaser has delayed execution and delivery of conveyance so as to defeat the broker of a commission, the broker must carry the burden of proof, either showing the refusal of the owner to convey to a purchaser presented by the broker or by competent evidence of an enforceable contract which would prevent the owner from conveying in case a purchaser were found by the broker.

I believe the proof required for recovery because of a breach must be just as positive, competent and credible as that required to warrant recovery for performance. Otherwise, the law would invite litigation and allow recovery for breach of contract upon evidence insufficient to warrant judgment for compliance with the terms of the agreement.

The record does not contain evidence necessary to sustain the judgment of the lower court. It appears that without evidence of an enforceable contract, the plaintiff brought this action prematurely. For the reasons stated, I concur.

WADE, Justice.

I dissent. It is my opinion that in a suit by a broker to recover a commission under a listing agreement which provides that if the owner sells the listed property himself during the period he shall be liable for the commission, it is

not necessary that there be proof that a conveyance had been made or a legally enforceable contract entered into between the owner and the purchaser during the listing period in order to recover. It is sufficient if there is evidence from which it could reasonably be inferred that a definite agreement to purchase and sell had been entered into between the owner and the purchaser of the property listed during the life of the agency even though no written contract was made until after the agency expired. In the case of the *Mercantile Trust Co.* v. *Lamar,* 148 Mo. App. 353, 128 S. W. 20, 22, in which a broker sued for his commission under a listing agreement similar to the one in the instant case, the evidence disclosed that an agent of the broker had mentioned the listed property to the man who subsequently became the purchaser. Before the listing had expired the man told the agent he had bought a home but was not at liberty to disclose what house it was until a later date. The owner admitted the sale of the property but said he purposely did not sell it until the day after the expiration of the listing period so that he would not have to pay the broker a commission. The owner introduced into evidence a written agreement to sell dated the day after the expiration of the listing and also a deed dated the same day. There was evidence that the abstract of title had been ordered a few days before the transaction was completed. The defendant there argued, as does the defendant in this case, that in the absence of proof of a legally enforceable contract or a conveyance made during the existence of the agency, the broker is not entitled to a commission. To that argument the court said:

"* * * * Neither do we accede to the proposition that if defendant had entered into a definite agreement with Reinberger by which defendant agreed to sell the property to the latter and his wife, and they agreed to buy it, this was not a sale which would entitle plaintiff to his commission because not evidenced by an instrument in writing. If such an agreement was made prior to the termination of plaintiff's agency on May 29th, and the execution of a deed was deferred merely for the purpose of evading liability to plaintiff for a commission, *the contract of sale was so far effective as to entitle plaintiff to a*

*verdict* \* \* \*. The instrument by which plaintiff was appointed agent would be defeated in one of its main provisions if a complete agreement might have been reached by defendant and the Reinbergers, and yet liability to plaintiff be evaded by postponing the formal consummation of a sale until its agency expired. Such an interpretation would relieve defendant from the duty to observe good faith in keeping his agreement with plaintiff." (Italics added.)

In the instant case the court found that a "sale" of the listed property had been made before the expiration of plaintiff's agency. The evidence on whether a sale had been made during this period is contradictory. The case was tried without a jury. Being a law case this court must take the court's finding that there was a "sale" as true if there is substantial evidence either direct or inferential from which the court could reasonably so find. In my opinion there was sufficient evidence from which the court as the trier of the facts could find, as it did, that a sale was made during the listing period and the conveyance delayed until after the expiration of plaintiff's agency for the purpose of avoiding payment of a commission to him.

The prevailing opinion cites *Piatt & Heath Co.* v. *Wilmer*, 87 Mont. 382, 288 P. 1021; *Daugherty* v. *Smith*, Tex. Civ. App., 192 S. W. 1131; *Hartig* v. *Schrader*, 190 Ky. 511, 227 S. W. 815; and *Hawks* v. *Moore*, 27 Ga. App. 555, 109 S. E. 807, as supporting the proposition that the word "sale" as used in a contract similar to the one in the instant case "means payment of the purchase price and the conveyance of title or the execution of a binding contract of sale." In *Piatt & Heath* v. *Wilmer*, supra, the question before the court was not whether a binding sale was made during the period of the listing, since it was uncontroverted that such a sale had been made, but whether the broker could recover a commission since he did not find the buyer or furnish a list of prospects. The court held the broker could recover the commission. In each of the other cases cited above the owner of the listed property under the particular provision of his listing agreement sought to avoid the payment of a commission to the broker on the ground that he had

sold the property himself, and the courts held in those cases that if the owner is to avoid payment of commission under those conditions, that there must be proof of a conveyance or legally enforceable agreement to sell made during the listing period.

It can readily be seen that the courts are confronted with a different problem where the defense of the owner who is trying to avoid the payment of commission is that a "sale" has been made which precludes the broker from recovering under the particular contract entered into between them than is presented to us in the instant case. In the former cases the owner is in full possession of the facts and can readily prove that an enforceable contract of sale has been entered into, if such is the fact. Also, if the owner were not required to make such proof it would make it easy for him to pretend that he had made the sale himself so as to avoid the payment of a commission, whereas the broker who is suing to recover under a contract which entitles him to his commission regardless of who makes the sale during the life of the agency is not in full possession of the true facts and in many instances would never be able to prove the existence of a sale except by circumstantial evidence where the parties to the deal desire to conceal the true facts. If a broker had to prove the existence of a valid written contract of sale, he would many times fail to recover the fees to which he is justly entitled under his contract. Courts should not place an interpretation on the meaning of words in contracts which will encourage connivance and fraud in order to avoid obligations.