■ STUART BARNET, Doing Business as NATIONAL REALTY COMPANY, Respondent-Appellant, v. SALVATORE CANNIZZARO, Appellant-Respondent, and ARVID JOHANNSON et al., Respondents.— Action in the City Court of White Plains to recover a broker's commission from Johannson and Cannizzaro, the alleged vendors of real property (1st cause of action) and to recover damages from the said vendors and Pierson and O'Connor, the brokers who had brought about the sale of the real property, based on allegations that they conspired to deprive plaintiff of the commission he had allegedly earned (2d cause of action). After trial before the court without a jury, a judgment was entered in favor of plaintiff against Cannizzaro on the first cause of action, in favor of Cannizzaro against plaintiff on the second cause of action, and dismissing the amended complaint as to the other defendants. Cannizzaro appeals from said

judgment insofar as it is in favor of plaintiff and against him, and plaintiff appeals from said judgment insofar as it dismisses the second cause of action as against Cannizzaro and dismisses the amended complaint against the other defendants. Judgment unanimously affirmed, without costs. On April 16, 1952 Cannizzaro and Johannson, then the owners of the property, signed an agreement granting plaintiff the "sole and exclusive right", for a period of 180 days, to sell the property for $47,500 or at any other price or terms to which they might consent. The owners agreed to pay "a commission of 5% of the purchase price in case the property is sold by me/us or by any other person, or if by your office during the term of this agreement, or within six months from the expiration, to anyone with whom you have negotiated" and the agreement provided that brochures were to be sent out on a cobrokerage basis to other brokers. That agreement was one of exclusive right of sale as contrasted to one of exclusive agency (*Slattery* v. *Cothran,* 210 App. Div. 581; *Werner* v. *Eurich,* 263 App. Div. 744). The term thereof included October 13, 1952 as the last day of the 180-day period (General Construction Law, § 20). On or about October 10, 1952 Johannson signed a contract to sell his one-half interest to Cannizzaro, with title to close on October 18, 1952. The contract was dated October 8, and Cannizzaro signed a check, dated October 7, to be used as the down payment. The conveyance was executed on October 22, 1952. On or about October 16, another written contract, dated October 21, was prepared, pursuant to which Cannizzaro agreed to sell the real property for the sum of $37,000 to the purchaser that was found by Pierson and O'Connor, the defendant brokers. That contract was signed by the purchaser on or about October 18 and was apparently signed by Cannizzaro on October 21. The conveyance by Cannizzaro was executed on October 27, 1952. The trial court found that Johannson did not know of the offers made by the defendant brokers and held that the sale of Johannson's interest to Cannizzaro was not a sale of the property within the contemplation of the terms of the contract granting plaintiff the exclusive right of sale and that his claim for commission could not be predicated upon that transaction. The court also found that the essential terms of the sale had been agreed upon between Cannizzaro and the purchaser before October 13, 1952, and held that neither the preparation of the contract of sale nor the signing by the respective parties was necessary to entitle plaintiff to his commission and awarded him judgment for $925, plus interest and costs, based on a cobrokerage basis. Plaintiff did not know of the negotiations between Cannizzaro and the defendant brokers until after October 27, 1952. He does not claim that the mere sale by Johannson of his one-half interest to Cannizzaro would be a basis for the award of a judgment in his favor, nor does he claim that the commission awarded to him should be 5% of the selling price instead of 2½%. None of the parties dispute the ruling that plaintiff would be entitled to damages if Cannizzaro and the purchaser actually agreed on the essential terms of the sale prior to October 14, 1952, despite the fact that the written contract of sale and the conveyance to the purchaser were not executed prior to that date (see, e.g., *Mercantile Trust Co.* v. *Lamar,* 148 Mo. App. 353; cf. *Lewis* v. *Dahl,* 108 Utah 486). Cannizzaro contends that an erroneous measure of damages was adopted but concedes that, if there had been a complete meeting of the minds between the parties, prior to October 14, the plaintiff would have been entitled to a commission or damages (see *Galloway* v. *Erie R. R. Co.,* 116 App. Div. 777, 780, affd. 192 N. Y. 545). In our opinion, the award of the commission or damages was properly measured by the rate of commission specified in the exclusive right of sale agreement (*Gaillard Realty Co.* v. *Rogers*

*Wire Works,* 215 App. Div. 326; *Blank* v. *Longenberger,* 132 Misc. 374, revd. on other grounds 133 Misc. 32; see, *e.g., Turner* v. *Baker,* 225 Pa. 359; cf. *Slattery* v. *Cothran,* 210 App. Div. 581, *supra).* The purchaser and Cannizzaro did not meet or speak with each other prior to October 14, 1952. During part of the period when the defendant brokers were negotiating with Cannizzaro prior to October 14, Cannizzaro and Johannson were negotiating with each other for the sale or purchase of the other's one-half interest. During the latter negotiations, Cannizzaro and his attorney were aware of the fact that a contract granting an exclusive right of sale had been executed although they had no copy thereof and were uncertain of its expiration date and whether by its terms it had expired. Mere preliminary negotiations, in good faith and without fraud, between Cannizzaro and the defendant brokers during the term of the exclusive right of sale contract, would not entitle plaintiff to a commission (*Mercantile Trust Co.* v. *Lamar,* 148 Mo. App. 353, *supra; Lewis* v. *Dahl,* 108 Utah 486, *supra).* Nevertheless, we cannot uphold Cannizzaro's contention that there was no evidence to support the finding that the essential terms of the sale had been agreed upon between Cannizzaro and the purchaser before October 13, 1952. The credibility of the witnesses, the reconciliation of conflicting statements, a determination of which should be accepted and which rejected, the truthfulness and accuracy of the testimony, whether contradictory or not, were issues for the trier of the facts (*Lee* v. *City Brewing Corp.,* 279 N. Y. 380, 384). The memory, motive, mental capacity, accuracy of observation and statement, truthfulness and other tests of the reliability of witnesses can be passed upon with greater safety by a trial judge who sees and hears the witnesses than by appellate judges who simply read the printed record (*People* v. *Gaimari,* 176 N. Y. 84, 94). An affirmance of so much of the judgment as is in favor of plaintiff carries with it an affirmance of so much of the judgment as dismisses the second cause of action. The dismissal was proper as against Cannizzaro for, as against him, the conspiracy cause of action claimed nothing more than a conspiracy to breach his own contract (*Labow* v. *Para-Ti Corp.,* 272 App. Div. 890; *Friedman* v. *Roseth Corp.,* 270 App. Div. 988, affd. 297 N. Y. 495; *Shapiro* v. *Greenwich Sav. Bank,* 266 App. Div. 359, affd. 293 N. Y. 724). No cause of action based on a conspiracy to deprive plaintiff of the commission he had earned was established because he obtained a judgment against Cannizzaro for his commission and therefore no damage was shown to have ensued as a result of the alleged conspiracy (*Kalmanson* v. *Callahan,* 276 App. Div. 983; *Simon* v. *Noma Elec. Corp.,* 293 N. Y. 171, 177; *Shapiro* v. *Greenwich Sav. Bank, supra).* Present — Nolan, P. J., Wenzel, Murphy, Ughetta and Kleinfeld, JJ.