Shirley A. COX, Executrix of the Estate of Joe F. Cox, Deceased, Appellant,

v.

James H. VENTERS and Peggy S. Venters, Appellees.

No. 92–CA–001708–MR.

Court of Appeals of Kentucky.

Sept. 23, 1994.

As Modified Oct. 14, 1994.

Rehearing Denied Dec. 2, 1994.

Venters and his wife, Peggy S. Venters. Tom Ballard, an agent employed by Cox, procured an offer to purchase the property for $195,000.00 from Bill Sparks. The written offer was accepted by James Venters on July 29, 1982. The so-called "Offer to Purchase Contract" provided for the payment of a 5% commission by the seller of the property to Cox for his services in locating a buyer. The contract was signed by Sparks and Venters, but was not signed by Venters' wife, Peggy.

The parties to the purchase contract agreed that Sparks would acquire the property by way of a land contract; and, in early 1983, the contemplated contract was signed by both James and Peggy Venters, as well as by Bill Sparks and his wife, Vickie. At the signing of the land contract, Sparks made a down payment of $30,000.00. The balance of the purchase price—$165,000.00—and interest was to be paid in four annual installments of $21,900.00, with the remainder due in the fifth year following execution of the contract. Other than the down payment, none of the purchase price was paid.

Randall Edward Norris, Bruce E. Smith, Smith & Norris, P.S.C., Nicholasville, for appellant.

Harlan H. Veal, Jr., Harlan H. Veal, Jr., P.S.C., Nicholasville, for appellee James H. Venters.

James F. Clay, Sr., Danville, for appellee Peggy S. Venters.

Before LESTER, C.J. and HUDDLESTON and SCHRODER, JJ.

## OPINION

HUDDLESTON, Judge.

This is an action brought by the executrix of the estate of a deceased real estate broker to recover a commission alleged to be due as a result of the sale of a 252–acre tract of land. The case was submitted to a jury which found that no commission was due. The broker's executrix appeals claiming entitlement to the commission as a matter of law.

In 1982, Joe Cox was the listing broker for a tract of land offered for sale by James H.

According to James Venters, he and his long-time friend Joe Cox orally agreed before the signing of the land contract that the latter's commission would be paid when Mr. and Mrs. Sparks made their first annual payment. Tom Ballard testified that he understood prior to the execution of the land contract that the payment of the commission, which he was to share, was to be made when James Venters sold some houses in Florida. In any event, the commission called for in the purchase contract was not paid when the land contract was signed, and it was still unpaid when Cox died on December 9, 1984.

Cox's executrix, Shirley A. Cox, argues on appeal that this case should never have been submitted to a jury because, as a matter of law, Cox became entitled to payment of the commission within a reasonable time after the signing of the land contract. The purchase contract unambiguously requires payment of the commission, Mrs. Cox contends, so that parole evidence to aid in its interpretation is inadmissible. Further, the executrix asserts, Venters' testimony regarding

the alleged modification of the purchase agreement to provide for payment of the commission only upon the happening of a condition precedent was inadmissible under the "dead man's statute"[1] in effect when this case was tried, leaving him with insufficient evidence that the purchase contract was modified.

James Venters, whose marriage to Peggy Venters was dissolved in 1987, acknowledges on appeal that his testimony regarding the alleged oral modification of the purchase agreement's commission provision was inadmissible, but he argues that direct and inferential evidence that the payment of the commission was to be deferred until the happening of a condition precedent justifies the jury's verdict. He points to Ballard's testimony, referenced above, and to the undisputed fact that the commission was not paid when the land contract was signed—although $30,000.00 changed hands—as evidence that payment of the commission was subject to a condition precedent.

Peggy Venters, relying upon the Statute of Frauds,[2] maintains that she is not liable for the commission because she did not sign the purchase contract and because her husband was not acting as her agent when he signed it. Mrs. Cox responds that while it may be true that Peggy Venters did not sign the purchase contract, she ratified it (including its commission provision) when she signed the land contract.

■ We begin our analysis with an examination of the seminal case addressing the question when a real estate broker earns his commission, *Shanklin v. Townsend,* Ky., 431 S.W.2d 874 (1968).[3] While the *Shanklin* scenario differs from this case,[4] its language is unquestionably relevant to the issues here.

A real estate broker may earn his commission "either by producing a person who is not only then, but at all times, ready, able, and willing to purchase the property

1. Ky.Rev.Stat. (KRS) 421.210(2).

2. KRS 371.010(8).

3. This case, insofar as it addresses the issue of prejudgment interest, was modified in *Shanklin v. Townsend,* Ky., 434 S.W.2d 655 (1968).

on the prescribed terms, *or by obtaining from the customer a binding contract* which the landowner himself may enforce, in case of a breach or default in its terms." (Emphasis by *Shanklin* court.) (Citations omitted.) In such cases the word "sale" is not construed as requiring consummation of the transaction.

*Id.* at 876.

We therefore come to these questions: (1) * * * (2) Can the contract be fairly construed to make the commission contingent on the receipt of sufficient proceeds by the seller from the buyer to pay for it? To answer either of these questions in the affirmative would repudiate the reasoning by which we have been forced to the conclusion that the word "sale" does not connote a completed transaction and that the brokers' entitlement to the stipulated commission is not defeated by a failure of the buyer or seller to consummate his contract.

*Id.* at 877. Absent a valid modification of the written purchase agreement, Cox earned his commission when he produced buyers who entered into a binding land contract with the Venters.

The next question to be answered is whether there was competent proof of a valid modification of the written purchase agreement. The inquiry begins with the Statute of Frauds, KRS 371.010, which, insofar as it is relevant, provides that:

No action shall be brought to charge any person:

\*　　\*　　\*　　\*　　\*　　\*

(8) Upon any promise, agreement, or contract for any commission or compensation for the sale or lease of any real estate or for assisting another in the sale or lease of any real estate;

\*　　\*　　\*　　\*　　\*　　\*

4. *Shanklin* involved a suit by real estate brokers, who had been granted an exclusive right to market a tract of land, to recover a commission where the buyer was procured by the sellers, rather than the brokers.

unless the promise, contract, agreement, representation, assurance or ratification, or some memorandum or note thereof, be in writing and signed by the party to be charged therewith, or by his authorized agent.

Here the only written memorandum that mentions the commission issue is the purchase agreement. If there was a subsequent agreement to make the payment of the commission dependent on a condition precedent, *i.e.*, the payment by the Sharps of the first annual installment or Venters' sale of Florida property, it was never reduced to writing. Where a contract is required by the Statute of Frauds to be in writing, a subsequent agreement which changes its terms must also be written and signed by the party to be charged to be enforceable.

(1) For the purpose of determining whether the Statute of Frauds applies to a contract modifying but not rescinding a prior contract, the second contract is treated as containing the originally agreed terms as modified. * * *

(2) Where the second contract is unenforceable by virtue of the Statute of Frauds and there has been no material change of position in reliance on it, the prior contract is not modified.

*Restatement (Second) of Contracts* § 149 (1981). Modification of a contract differs from abandonment or recision of the contract, which may be done orally. *McKinney v. Flanery*, 205 Ky. 766, 266 S.W. 629 (1924).

The only evidence offered by the Venters that the original agreement was modified by the insertion of a condition precedent to the payment of the commission was James Venters' statement that he and Joe Cox agreed before the land contract was signed that the commission would not be paid unless the Sharps made the first annual installment payment called for in the land contract. That testimony was inadmissible because of the "dead man's statute," KRS

421.210. Although the statute has now been repealed,[5] it was in effect at all times relevant to this action.[6] The statute prohibits a person from testifying for himself "concerning any verbal statement of, or any transaction with, or any act done or omitted to be done by ... one who ... [is] dead when the testimony is offered to be given...." KRS 421.210(2). An individual testifies for himself, for purposes of the dead man's statute, if he stands to lose or gain by the direct operation and impact of the judgment in the case in which he proposes to testify. Robert G. Lawson, *The Kentucky Evidence Law Handbook* § 11.00 (2nd ed. 1984). Clearly, James Venters' testimony falls into this category and so was inadmissible. *Duke's Adm'r v. Patton*, 264 Ky. 598, 95 S.W.2d 249 (1936); Lawson, *supra*, § 11.05(E). As earlier noted, he admits as much on appeal.

The Venters are left with the testimony of Tom Ballard and whatever inference can be drawn from the fact that a commission was not paid simultaneously with the signing of the land contract. Viewed in the light most favorable to the Venters, Ballard's testimony establishes nothing more than that he "understood" before the land contract was signed that a commission would not be paid that day, but would instead be paid some three to six months later, after James Venters had sold some houses in Florida. He did not claim to have been privy to any conversation between Joe Cox and James Venters at which the payment of the commission was discussed. This testimony falls far short of establishing that Cox and Venters had orally modified the purchase contact's commission provision. Furthermore, the only inference that can be drawn from the fact that the commission was not paid when the land contract was signed is that there was some agreement to defer its payment. There is simply no evidence to support the claim,[7] nor may any inference be drawn, that the parties agreed to make the payment of a

---

5. The statute was repealed effective July 1, 1992, concurrently with the enactment of the new Kentucky Rules of Evidence. See Compiler's notes to KRS 421.210.

6. This case was tried on May 11, 1992, and judgment was entered on May 27, 1992.

7. Certainly, there is not the clear and convincing evidence required by *Dalton v. Mullins*, Ky., 293 S.W.2d 470, 475 (1956).

commission contingent upon the payment of an annual installment by the Sharps or contingent upon the happening of any other event.

■ While the purchase agreement does not specify when the commission is to be paid, it is the rule in Kentucky that performance must be tendered within a reasonable time. *Dalton v. Mullins,* Ky., 293 S.W.2d 470, 476 (1956); *Martin Oil & Gas Co. v. Fyffe,* 251 Ky. 517, 65 S.W.2d 686 (1933).

■ Peggy Venters argues on appeal that because she did not sign the purchase agreement, she is not obliged to pay Cox's commission. She grounds her argument on the Statute of Frauds, quoted above. While it is undisputed that Ms. Venters did not sign the purchase contract, it is similarly beyond dispute that she ratified it when she signed the land contract.

> As applied to the law of agency, ratification is the affirmance of an act by one for or in behalf of another at a time when he had no authority to do the act for the one in whose name it was done. Under the distinctions in terminology drawn by the American Law Institute, this would be an "affirmance," which is defined as a manifestation of an election by one on whose account an unauthorized act has been performed to treat the act as authorized. Restatement of the Law of Agency, § 83.

> \* \* \* \* \* \*

> [I]t is an established principle of law that where one with knowledge of material facts accepts or retains the benefits of the efforts or acts of another acting for him, he is deemed to have ratified the methods employed for he may not, though innocent himself, receive the benefits and at the same time disclaim responsibility for the measures by which they were acquired. (Citations omitted.)

*Stewart v. Mitchell's Adm'x,* 301 Ky. 123, 190 S.W.2d 660, 662 (1945).

Peggy Venters concludes by demanding sanctions against the appellant and her counsel for filing a frivolous lawsuit and a frivolous appeal. It is obvious from this opinion and the action that we take today that we think that neither the lawsuit nor the appeal is frivolous. The demand for sanctions is, therefore, denied.[8]

Based upon the foregoing analysis of the issues presented, we believe the executrix's motion for a directed verdict should have been granted. Therefore, the judgment from which this appeal is prosecuted is reversed and this case is remanded to Jessamine Circuit Court with directions to enter judgment for the appellant against both appellees for $9,750.00, prejudgment interest at the rate of 8% per annum from and after Cox's commission reasonably should have been paid,[9] interest on the judgment as provided by law,[10] and costs. The court may take additional evidence, if necessary, to determine when the commission reasonably should have been paid.

ALL CONCUR.

---

8. One seeking the imposition of sanctions ought to take care to follow the Rules of Civil Procedure herself. Peggy Venters' two-page brief violates in numerous particulars the requirements of CR 76.12. For instance, it lacks the statement required by CR 76.12(4)(d)(ii), and the argument does not contain any references to the record and cites to no authorities, other than the Statute of Frauds, in violation of CR 76.12(4)(d)(iii).

9. KRS 360.010; *Shanklin v. Townsend,* Ky., 434 S.W.2d 655 (1968).

10. KRS 360.040.