N.V. v E.V. (2025 NY Slip Op 51731(U))

[*1]

N.V. v E.V.

2025 NY Slip Op 51731(U)

Decided on October 28, 2025

Supreme Court, Westchester County

Hyer, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on October 28, 2025
Supreme Court, Westchester County

N.V., Plaintiff,

against
E.V., Defendant.

Index No. XXXXX

Plaintiff: Howard M. Lefkowitz, Esq., Lefkowitz Legal PLLC, 32 Flag Hill Road, Chappaqua, NY 10514
Defendant: No Appearance - Default

James L. Hyer, J.

Relevant Factual and Procedural History
This action was commenced on March 6, 2025, with the Plaintiff's filing of a summons with notice (hereinafter referred to as the "Summons"), which included a notice of automatic orders pursuant to New York State Domestic Relations Law (hereinafter "DRL") § 236, notice of guideline maintenance, and notice concerning continuation of health care coverage pursuant to DRL § 255(1).[FN1]

The Summons requests judgment against the Defendant dissolving the marriage between the parties to this action pursuant to DRL § 170(7) asserting that the parties' relationship had irretrievably broken down for a period in excess of six months, along with ancillary relief including: (1) awarding Plaintiff maintenance; (2) awarding Plaintiff equitable distribution of marital property, including a distributive award to Plaintiff if required or appropriate; (3) declaring Plaintiff's separate property; (4) directing Defendant to maintain medical and dental insurance coverage for the benefit of Plaintiff; (5) directing Defendant to maintain life insurance coverage on Defendant's life with Plaintiff to be designated as irrevocable beneficiary; (6) awarding Plaintiff counsel fees, expert fees, and other litigation expenses; and (7) awarding Plaintiff such other and further relief as to this Court may seem just and proper, together with the [*2]costs and disbursements of this action.
On July 17, 2025, Plaintiff filed a request for judicial intervention [FN2]
with a motion by order to show cause (hereinafter "Motion Sequence No. 1"),[FN3]
seeking the entry of an order granting the following relief: (1) directing that service of the summons be made upon Defendant via email and text message, pursuant to New York State Civil Practice Law and Rules (hereinafter "CPLR") § 308(5), because service pursuant to CPLR § 308(1) through (4) is impracticable; (2) extending the time within which to serve the summons with notice on Defendant by 120 days, pursuant to CPLR § 306-b; and (3) for such other and further relief as to this Court seems just and proper.
On July 21, 2025, Motion Sequence No. 1 was conformed,[FN4]
providing a briefing schedule with a return date of August 8, 2025, proof of service for which was filed.[FN5]

On August 11, 2025, a Decision and Order was entered pertaining to Motion Sequence No. 1., for which a notice of entry was filed,[FN6]
providing the following directives:
"ORDERED that Motion Sequence No. 1 is hereby granted; and it is further
ORDERED that Plaintiff shall serve her Summons by e-mail and by text message to Defendant's Phone Number, proof of service to be filed on NYSCEF; and it is further
ORDERED that Plaintiff's time to effectuate service on the Defendant as outlined herein-above is extended forty-five (45) days from the entry of this Order; and it is further
ORDERED that the mailing requirement for matrimonial actions is hereby removed by this Court as Plaintiff, with due diligence, cannot ascertain a place where Defendant would receive mail; and it is further
ORDERED that to the extent any relief requested has not been granted or otherwise addressed herein, it is hereby denied."
On August 11, 2025, an Order [FN7]
was entered directing a preliminary conference to be held on October 3, 2025, at 9:00 a.m., directing that Plaintiff serve Defendant with the Order by e-mail and text message by August 15, 2025, with proof of service filed by that date.
On August 13, 2025, Plaintiff's counsel filed proofs of service of the Summons and [*3]Orders.[FN8]

On October 3, 2025, a preliminary conference was held wherein appearances were made by Plaintiff and Plaintiff's counsel, with no appearance made by Defendant, nor was any request made by Defendant for an adjournment of the conference after which an Order [FN9]
was entered providing the following:
"ORDERED that the Defendant is in default; and it is hereby
ORDERED that an Inquest shall be held on October 27, 2023, at 9:00 a.m., wherein all parties and counsel must appear in-person to address all of the issues pending before this Court pertaining to this action, including but not limited to: (1) grounds for dissolution of the parties' marriage; (2) equitable distribution of marital property; (3) declaration of separate property; (4) claims of dissipation; (5) spousal support and maintenance; (6) child custody, access and support; (7) resumption of pre-marriage surnames; (8) attorneys' fees and litigation expense requests; and (9) any other issues arising out of the requested dissolution of the parties' marriage; and it is further
ORDERED that by October 20, 2025, both parties shall file with the Court and serve upon each other via overnight delivery the following: (l) Witness List for all witnesses to provide testimony at the Inquest with the understanding that if witnesses are not disclosed they will precluded from testifying at the Inquest; and (2) Exhibit List with copies of all exhibits to be utilized at the Inquest with the understanding that if disclosure is not made pursuant to this directive exhibits will be precluded at Inquest; and it is further
ORDERED that by October 6, 2025, Plaintiff shall serve Defendant with a copy of this Order with Notice of Entry on Defendant via by e-mail and text message, and file proof of service with the Court, including copies of the text messages sent; and it is further
ORDERED that Plaintiff shall order a copy of the Court Transcript, pay the entire cost of same and submit to the Court to be so ordered by November 3, 2025."
On October 6, 2025, a notice of entry of the inquest scheduling order with proof of service was filed.[FN10]

Neither party filed any pre-inquest disclosure.
Inquest
On October 27, 2025, an inquest was held before the undersigned wherein appearances were made by Plaintiff and Plaintiff's counsel, and Defendant failed to appear or request an adjournment. Accordingly, the inquest proceeded in the absence of defendant. At inquest, [*4]Plaintiff was the only witness to provide testimony and three exhibits were admitted into evidence including the following:
1. Plaintiff's Exhibit 1 — Final Order on Petition for Custody and Visitation with annexed Mediated Parenting Agreement; dated January 29, 2019; entered by Referee Lisa Aschkenasy, Referee, New York State Family Court, Kings County; in the proceeding N.V. v. E.V.; commenced under file number XXXXXX and docket number X-XXXXX-XX (hereinafter "Custody Order").
2. Plaintiff's Exhibit 2 — Findings of Fact on Petition for Child Support; dated July 26, 2021; entered by Magistrate Amy R. Hozer-Weber, New York State Family Court, Kings County; in the proceeding N.V. v. E.V.; commenced under file number XXXXXX, docket number X-XXXXX-XX, and CSMS number XXXXXXXXX (hereinafter "Support Order").
3. Plaintiff's Exhibit 3 — Adjusted Order of Support; dated August 19, 2023; entered by New York City Department of Social Services; in the proceeding N.V. v. E.V. (hereinafter "Adjusted Support Order").
Legal Analysis
A. Witness Credibility
The Second Department Appellate Division has held that the determination of witness credibility is to be determined by the trier of fact:
"The credibility of the witnesses, the reconciliation of conflicting statements, a determination of which should be accepted and which rejected, the truthfulness and accuracy of the testimony, whether contradictory or not, were issues for the trier of the facts. The memory, motive, mental capacity, accuracy of observation and statement, truthfulness and other tests of the reliability of witnesses can be passed upon with greater safety by a trial judge who sees and hears the witnesses than by appellate judges who simply read the printed record" (Barnet v. Cannizzaro, 3 AD2d 745 [2d Dept 1957] [internal citations omitted).
It has been recognized that in the context of matrimonial proceedings, "Since the court had the opportunity to view the demeanor of the witnesses at the hearing, it was in the best position to gauge their credibility, and its resolution of credibility issues is entitled to great deference on appeal" (Lieberman v. Lieberman, 21 AD3d 1004 [2d Dept 2005] [internal citations omitted]).
Based upon the demeanor and substance of the testimony of Plaintiff, the Court finds that Plaintiff is a credible witness. The Court made this determination based upon an assessment of the Plaintiff's character, temperament and sincerity. At inquest, Plaintiff responded to all questions presented in a clear and direct manner.
B. Grounds for Dissolution of the Parties' Marriage.
Pursuant to New York State Domestic Relations Law § 170(7):
"An action for divorce may be maintained by a husband or wife to procure a judgment divorcing the parties and dissolving the marriage on any of the following grounds:
* * *
(7) The relationship between husband and wife has broken down irretrievably for a [*5]period of at least six months, provided that one party has so stated under oath. No judgment of divorce shall be granted under this subdivision unless and until the economic issues of equitable distribution of marital property, the payment or waiver of spousal support, the payment of child support, the payment of counsel and experts' fees and expenses as well as the custody and visitation with the infant children of the marriage have been resolved by the parties, or determined by the court and incorporated into the judgment of divorce."
A spouse's statement under oath that the marriage was irretrievably broken for a period of six months is, by itself, sufficient to establish a cause of action for divorce as a matter of law (see Hoffer-Adou v Adou, 121 AD3d 618, 619 [1st Dept 2014]).
Based upon the submissions made to this Court, along with the testimony and evidence received at the Inquest, Plaintiff's request is granted to the extent that a judgment be entered granting Plaintiff a divorce in her favor and against Defendant, dissolving forever the bonds of matrimony existing between Plaintiff and Defendant upon the grounds of the Irretrievable Breakdown of the Relationship pursuant to DRL § 170(7).
C. Equitable Distribution of Marital Assets, Declaration of Separate Property and Allocation of Debts.
The Appellate Division, Second Department has noted the manner in which a trial court is to make a determination as to equitable distribution in the context of a matrimonial action:
"The Equitable Distribution Law mandates that, whenever a marriage is terminated, absent an agreement of the parties, the court must determine the rights of the parties in their separate and marital property and provide for the disposition of the property in the final judgment (see Domestic Relations Law § 236[B][5][a]).
a * * *
The court is obligated to render a decision in which it sets forth the factors it considered and the reasons for its decision, a requirement that cannot be waived (see Domestic Relations Law § 236[B][5][g]). In the absence of express findings of fact and of a detailed discussion of the enumerated factors, meaningful appellate review is precluded and a remittal for further fact finding may be required (see Gape v. Gape, 110 AD2d 621, 487 N.Y.S.2d 111; see also Kluge v. Kluge, 159 AD2d 968, 552 N.Y.S.2d 771). Facts must be sufficiently developed at trial to enable a reasoned determination of the issues of equitable distribution and, if not, a new trial may be ordered (see Madu v. Madu, 135 AD3d 836, 837, 24 N.Y.S.3d 678; McLoughlin v. McLoughlin, 74 AD3d 911, 915, 903 N.Y.S.2d 467) (Kaufman v Kaufman, 189 AD3d 31, 52 [2d Dept. 2020])."
The New York State Domestic Relations Law § 236[B][5] notes, in part, that:
"b. Separate property shall remain such.
c. Marital property shall be distributed equitably between the parties, considering the circumstances of the case and of the respective parties.
d. In determining an equitable disposition of property under paragraph c, the court shall [*6]consider:
(1) the income and property of each party at the time of marriage, and at the time of the commencement of the action;
(2) the duration of the marriage and the age and health of both parties;
(3) the need of a custodial parent to occupy or own the marital residence and to use or own its household effects;
(4) the loss of inheritance and pension rights upon dissolution of the marriage as of the date of dissolution;
(5) the loss of health insurance benefits upon dissolution of the marriage;
(6) any award of maintenance under subdivision six of this part;
(7) any equitable claim to, interest in, or direct or indirect contribution made to the acquisition of such marital property by the party not having title, including joint efforts or expenditures and contributions and services as a spouse, parent, wage earner and homemaker, and to the career or career potential of the other party. The court shall not consider as marital property subject to distribution the value of a spouse's enhanced earning capacity arising from a license, degree, celebrity goodwill, or career enhancement. However, in arriving at an equitable division of marital property, the court shall consider the direct or indirect contributions to the development during the marriage of the enhanced earning capacity of the other spouse;
(8) the liquid or non-liquid character of all marital property;
(9) the probable future financial circumstances of each party;
(10) the impossibility or difficulty of evaluating any component asset or any interest in a business, corporation or profession, and the economic desirability of retaining such asset or interest intact and free from any claim or interference by the other party;
(11) the tax consequences to each party;
(12) the wasteful dissipation of assets by either spouse;
(13) any transfer or encumbrance made in contemplation of a matrimonial action without fair consideration;
(14) whether either party has committed an act or acts of domestic violence, as described in subdivision one of section four hundred fifty-nine-a of the social services law, against the other party and the nature, extent, duration and impact of such act or acts;
(15) in awarding the possession of a companion animal, the court shall consider the best interest of such animal. "Companion animal", as used in this subparagraph, shall have the same meaning as in subdivision five of section three hundred fifty of the agriculture and markets law; and
(16) any other factor which the court shall expressly find to be just and proper.
e. In any action in which the court shall determine that an equitable distribution is appropriate but would be impractical or burdensome or where the distribution of an interest in a business, corporation or profession would be contrary to law, the court in lieu of such equitable distribution shall make a distributive award in order to achieve equity between the parties. The court in its discretion, also may make a distributive award to supplement, facilitate or effectuate a distribution of marital property.
* * *
g. In any decision made pursuant to this subdivision, the court shall set forth the factors it considered and the reasons for its decision and such may not be waived by either party or counsel."
It is further appropriate for the Court to allocate responsibility for the payment of debts between the parties involved in a matrimonial action (Goddard v. Goddard, 256 AD2d 545 [2d Dept 1998]; see also Dellafiora v. Dellafiora, 54 AD3d 715 [2d Dept 2008]).
Based upon the submissions made to this Court, along with the testimony and evidence received at the inquest, and the Court's review of each of the factors set forth within the DRL noted above, the Plaintiff's request is granted to the extent that:
1. Equitable Distribution and Declaration of Separate Property — Each party shall retain sole ownership, title and interest to all property, tangible, real or otherwise in each parties' possession, custody and control, including, but not limited to: (1) financial accounts; (2) tangible personal property; (3) real property; (4) retirement accounts, and (5) all other property.
2. Debts - Both parties shall be solely responsible for any debts held in their respective names.
D. Plaintiff's Request as to Spousal Support and Maintenance.
A party in a matrimonial action may waive spousal maintenance and support. (see Messina v. Messina, 533 N.Y.S.2d 298 [2d Dept 1988].)
Based upon the submissions made to this Court, along with the testimony and evidence received at the inquest, Plaintiff's request is granted to the extent that neither party shall be required to provide spousal maintenance and support to the other.
E. Plaintiff's Request That Pursuant to DRL § 240-a, Either Party Be Authorized To Resume The Use of a Pre-Marriage Name.
In the context of a matrimonial action, trial courts have the authority to grant parties the request to resume the use of prior pre-marriage names.
Based upon the submissions made to this Court, along with the testimony and evidence received at the Inquest, both parties may resume the use of any pre-marriage sur-names, including but not limited to, Defendant's maiden name "[REDACTED]."
F. Plaintiff's Request Pertaining to Child Custody.
"Priority in custody disputes should usually be given to the parent who was first awarded custody by the court or to the parent who obtained custody by voluntary agreement" (White v. Mazzella—White, 84 AD3d 1068 [2d Dept 2011]). "Where possible, custody should be established on a long-term basis, 'at least so long as the custodial parent has not been shown to be unfit, or perhaps less fit, to continue as the proper custodian'" (Jackson v. Jackson, 31 AD3d 386 [2d Dept 2006], quoting, Obey v. Degling, 37 NY2d 768 [1975]).
"The paramount concern when making such a determination is the best interests of the child under the totality of the circumstances" (Burke v. Squires, 162 N.Y.S.3d 434 [2d Dept 2022]).
"Factors to be considered include the relative fitness of the parents, the quality of the home environment, the parents' financial status, the parental guidance given to the child, the ability of each parent to provide for the child's emotional and intellectual development, and the effect an award of custody to one parent might have on the child's relationship with the other parent" (Hogan v. Hogan, 71 NY.S.3d 601 [2d Dept 2018]). "Furthermore, in determining custody, while the express wishes of children are not controlling, they are entitled to great weight, especially where their age and maturity would make their input particularly meaningful" (Canella v. Anthony, 4 N.Y.S.3d 533 [2d Dept 2015]).
In the context of matrimonial actions commenced before the New York State Supreme Court, the terms of orders entered by the New York State Family Court pertaining to custody and support may be incorporated by reference into a judgment of divorce (NY Const Art VI, §§§ 7, 13, 19, see also, FCA § 462 [requiring the termination of a Family Court order regarding child support upon the Supreme Court issuing its own support order, unless, as an alternative to crafting a new order, the Supreme Court elects to continue the Family Court order]).
At inquest, Plaintiff testified that there is one child of the marriage being E.C.V., Jr., date of birth XX/XX/XXXX (hereinafter "Child") for which the Custody Order was entered which provided:
"Now, after examination and inquiry into the facts and circumstances of the case and hearing the proofs and testimony offered in relation thereto, this Court finds and determines that: on consent of both parties
And it is therefore ORDERED that the best interests of the above-named child require that custody and visitation be awarded as follows SEE SCANNED MEDIATED AGREEMENT.
The Mediated Parenting Agreement annexed to the Custody Order set forth the following terms pertaining to the custody and access of the Child:
"THIS PARENTING AGREEMENT is made on 1/29/19 by E.V., Father and N.V., Mother. The parties are the parents of the child, namely, E.C.V., Jr. born X/XX/XX. The parents were referred by this Court to the New York City Family Court Mediation Program to work on resolving the issues between them related to the parenting of their child. The parents have reached this agreement, and they wish to have it entered as part of the court record and so ordered, insofar as the provisions are enforceable. The parents represent that they fully understand all of the terms and obligations of this agreement. The parents agree as follows:
CUSTODY
1. Legal Custody: Both parents agree that they will have Joint Legal Custody of E.C.V., Jr. both having an equal right and responsibility with respect to all major decisions relating to the child's education, religious upbringing and major medical issues.
2. Physical Custody: Both parents agree the Physical Custody of E.C.V., Jr. will be with the Mother except for the Parenting Time/Visitation of the Father.
3. Weekdays/Weekends: a) Both parents agree the Father will have alternate weekends visitation from Friday between 5:00 & 6:00 PM until Sunday between 5:00 & 6:00PM. The Father will pick up & drop off at the Mother's home. b) Both parents agree the Father will have visitation during the week if he is able. He will contact the Mother the morning of to see the availability of E.C.V., Jr. and the Mother's plans. The visit will be for approximately 2 hours. The drop off and pick up will be at the Mother's home.
4. Holidays: a) Both parents agree to celebrate the holidays as they have in the past. b) Both parents agree for holidays that are always 3 day weekends i.e. Martin Luther King's Weekend, President's Weekend, Memorial Day Weekend & Labor Day Weekend they will keep to their regular schedule unless something is planned. They will discuss in advance any change to their plans.
5. Special Days: a) Both parents agree E.C.V., Jr. will spend Mother's Day with his Mother and Father's Day with his Father. b) Both parents agree they would like to have E.C.V., Jr. with them on their birthdays if possible. The Mother's birthday is X/XX. The Father's birthday is X/XX. c) Both parents agree to be open to discussion for any plans for E.C.V., Jr.'s birthday X/XX.
6. School Breaks/Summer Breaks: a) Both parents agree for the School Breaks and the Summer Break hey will keep to their regular schedule. b) Both parents agree the Father can notify the Mother the night before if he is able to take E.C.V., Jr. for any extra visit during any of the breaks.
7. Vacations: a) Both parents agree to give each other 2 weeks' notice to take E.C.V., Jr. on a vacation in the country and an itinerary with destination, travel arrangements and telephone numbers. b) Both parents agree to give each other one months' notice to take E.C.V., Jr. on a vacation out of the country and an itinerary with destination, travel arrangements and telephone numbers. c) Both parents agree to give each other a letter of expressed written consent to take E.C.V., Jr. on a vacation out of the country and to have it notarized. d) Both parents agree E.C.V., Jr. can have a passport.
8. Communication: a) Both parents agree that text will be their main way of communicating. They are also open to phone and all other forms of communication. b) Both parents agree in an emergency to act immediately taking care of the emergency and notify the other parent as soon as possible identifying it as an emergency. The other parent will respond as soon as possible upon receiving the message. c) The Mother has agreed to share E.C.V., Jr.'s calendar with the Father. d) The Father will get the school [*7]calendar off the computer.
9. Relocation/Geographic Restrictions: The parents agree that it is important for E.C.V., Jr. to have two parents. As such the parents further represent that neither is planning to relocate outside of a 50 mile radius. They further represent that if that became a possibility, they would notify each other and reach a written agreement, return to mediation to resolve the issue or return to court.
10. Dealing With Change: a) The parents understand that, if they both want to modify this agreement, they may do so at any time by writing a new agreement which they both sign. The parents also understand that, if they do not agree, changes can only be made by filing a modification petition in Court showing a change in circumstances. At that time they may request that the case be referred back to mediation. b) The parents acknowledge that they have been advised of their right to consult an attorney during this process and that they may have an attorney review this parenting plan before signing it."
Based upon the submissions made to this Court, along with the testimony and evidence received at the inquest, the Court determines that the custody and access of the Child shall be as set forth within the Custody Order. To effectuate this determination, the terms set forth in the Custody Order shall be incorporated by reference, but not merged with the judgment of divorce to be entered by this Court. The Court makes this determination as doing so will be in the best interests of the Child in providing for the continuation of the custody and access terms that have been in place on the consent of the parties since January of 2019.
G. Plaintiff's Request Pertaining to Child Support.
In making a determination as to child support awards, inclusive of basic child support and any statutory add-ons, the Court is guided by the New York State Child Support Standards Act (hereinafter "CSSA") for which a movant seeking an award of support and/or modification of a prior support award must produce financial disclosure pertaining to both parents (Wallach v. Wallach, 37 AD3d 707 [2d Dept 2007]).
The Support Order provided the following directives pertaining to the support of the Child:
"The basic child support obligation for support of the following child is $371.00 weekly:
Name Date of Birth
E.C.V., Jr. XX/XX/XXXX
N.V. is the custodial party, whose pro rata share of the basic child support obligation is $263.00 weekly. E.V. is the non-custodial party, whose pro rata share of the basic child support obligation is $108.00 weekly. The court has determined that child support shall be paid by E.V. to N.V. in the amount of $108.00 weekly. E.V.'s pro rata share of the basic child support obligation is neither unjust nor inappropriate. Health insurance availability for each party is as follows: For N.V., health insurance is available through an employer or organization. E.V. was not present in Court. N.V. is directed to continue health insurance coverage under the current available plan for the child, E.C.V., Jr., with [*8]contribution or premium to be paid by N.V.. This plan contains the following benefits: Medical, Dental, Optical, and Prescription Drug. The retroactive support totals $11,463.43. It consists of $11,463.43 for basic payment for the period from July 15, 2019 to July 26, 2021. The Support Collection Unit is directed to credit the Respondent with all payments made towards the Temporary Order of Support. The mother will be responsible for 71% of the subject child's unreimbursed medical expenses. The father will be responsible for 29% of the subject child's unreimbursed medical expenses."
The Adjusted Support Order the indicated that the new child support obligation would be increased to $122.00 weekly to be paid by Defendant to Plaintiff as and for support of the Child effective October 27, 2023.
Based upon the submissions made to this Court, along with the testimony and evidence received at the inquest, the Court determines that the custody and access of the Child shall be as set forth within the Support Order as amended by the Adjusted Support Order. To effectuate this determination, the terms set forth in the Support Order as amended by the Adjusted Support Order shall be incorporated by reference, but not merged with the judgment of divorce to be entered by this Court.
H. Attorneys' Fees and Litigation Costs.
The Appellate Division Second Department has noted how trial court should determine if an award of attorneys' fees is warranted in a matrimonial action:
"In a matrimonial action, an award of attorney's fees is a matter committed to the sound discretion of the trial court, and the issue is controlled by the equities and circumstances of each particular case. The purpose of Domestic Relations Law § 237(a) is to redress the economic disparity between the monied spouse and the nonmonied spouse by ensuring that the latter will be able to litigate the action on equal footing with the former.
In determining whether to award attorney's fees, the court should review the financial circumstances of both parties, together with all of the other circumstances of the case, including, inter alia, the relative merit of the parties' positions, and whether either party has engaged in conduct or taken positions resulting in a delay of the proceedings or unnecessary litigation."
(Brockner v Brockner, 174 AD3d 567 [2d Dept 2019][internal citations omitted).
Based upon the submissions made to this Court, along with the testimony and evidence received at the inquest, this Court determines that both parties shall be solely responsible for the legal fees and costs arising out of this action that they have incurred.
I. Other Relief.
Any relief specifically not granted or otherwise addressed herein is denied.
* * *
Based upon the foregoing, it is hereby
ORDERED that Plaintiff is granted a Judgment of Divorce against Defendant, dissolving forever the bonds of matrimony existing between Plaintiff and Defendant upon the grounds of the Irretrievable Breakdown of the Relationship pursuant to DRL § 170(7), in addition to the ancillary relief as decided herein; and it is further
ORDERED that by October 31, 2025, Plaintiff's counsel shall serve via e-mail and text message this Decision and Order with Notice of Entry on Defendant, and shall file an Affidavit of Service by October 31, 2025; and it is further
ORDERED that by November 28, 2025, Plaintiff's counsel shall file with the Court, with notice of settlement on Defendant by e-mail and text message, with proof of service, the following documents:
(1) Proposed Findings of Fact & Conclusions of Law;
(2) Proposed Judgment of Divorce;
(3) All other ancillary documents needed for this Court to enter a Judgment of Divorce; and it is further
ORDERED that Plaintiff's counsel shall order a copy of the Court Transcript from the Inquest, shall pay the entire cost of same and submit to be so ordered by November 28, 2025; and it is further
ORDERED that to the extent any relief sought has not been granted, it is expressly denied.
The foregoing constitutes the Decision and Order of the Court.
Dated: October 28, 2025
White Plains, New York
ENTER:
HON. JAMES L. HYER, J.S.C.

Footnotes

Footnote 1:See, NYSCEF Doc. No. 1.

Footnote 2:See, NYSCEF Doc. Nos. 14 & 15.

Footnote 3:See, NYSCEF Doc. Nos. 2-13.

Footnote 4:See, NYSCEF Doc. No. 16.

Footnote 5:See, NYSCEF Doc. No. 17.

Footnote 6:See, NYSCEF Doc. No. 20.

Footnote 7:See, NYSCEF Doc. No. 19.

Footnote 8:See, NYSCEF Doc. Nos. 21 & 22.

Footnote 9:See, NYSCEF Doc. No. 25.

Footnote 10:See, NYSCEF Doc. Nos. 26 & 27.